**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X

ROSANNE F. OTT,
Derivatively on behalf of similarly situated
shareholders of Alger Health Science Fund,

           **Plaintiffs,**

        **v.**

FRED ALGER MANAGEMENT, INC.,
FRED ALGER & COMPANY, INC.,
ALGER ASSOCIATES, INC., and DANIEL
C. CHUNG, individually,

         **Defendants.**
-------------------------------------------------------------- X

    **Civ. No. 11 Civ 4418-RJH**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS FRED ALGER
MANAGEMENT, INC.'S, FRED ALGER & COMPANY, INC.'S, ALGER ASSOCIATES,
INC.'S AND DANIEL C. CHUNG'S MOTION
TO STRIKE SCANDALOUS AND IMPERTINENT
MATTER OR, IN THE ALTERNATIVE,
TO PLACE CHALLENGED ALLEGATIONS UNDER SEAL**

    Defendants Fred Alger Management, Inc., Fred Alger & Company, Inc., Alger

Associates, Inc. and Daniel C. Chung, individually (collectively, "Defendants"), by their

attorneys, Foley & Lardner LLP, pursuant to Fed. R. Civ. P. 12(f), respectfully move this Court,

on an emergency basis, to strike 55 paragraphs of scandalous and impertinent matter from the

complaint ("Complaint") filed by Plaintiff Rosanne F. Ott ("Plaintiff"), or, in the alternative, to

permanently seal said paragraphs.  Defendants further move the Court to issue an interim Order

to seal the Complaint pending the hearing on this Motion.

## INTRODUCTION

    Fifty-four pages into what is in essence a retaliatory discharge claim by Plaintiff,

Plaintiff's allegations take a shocking and improper detour.  From paragraphs 299 to 354 (the

"Challenged Paragraphs")[1], Plaintiff begins to make false and utterly defamatory allegations about Defendant Daniel C. Chung, who, in paragraph 1 of her Complaint, Plaintiff describes as the President, Chief Executive Officer and Chief Investment Officer and a Portfolio Manager of Defendants Fred Alger Management, Inc., Fred Alger & Company, Inc. and Alger Associates, Inc. These Challenged Paragraphs falsely accuse Mr. Chung of sexual indiscretions, of making sexually-charged remarks and of marital infidelity, among other slurs. The allegations have absolutely nothing to do with Plaintiff's claims and are solely asserted to cause embarrassment and humiliation to Mr. Chung and thereby to give Plaintiff an unfair advantage in this litigation. The paragraphs are a textbook example of the scandalous and impertinent matter that is appropriately stricken under Fed. R. Civ. Proc. 12(f) and that is the appropriate relief sought by this Motion.

In the alternative, the Challenged Paragraphs should be placed under seal and all subsequent references to the Challenged Paragraphs in future pleadings and other filings should also made be under seal.

---

[1] As explained in the accompanying Affidavit of Todd C. Norbitz ("Norbitz Aff."), the filed Complaint is on record and available to the Court. However, in an effort to minimize the dissemination of the Challenged Paragraphs, Defendants have not attached the Complaint to this Motion. Of course, Defendants will make the Complaint available to the Court during the hearing on their Motion, as necessary. Norbitz Aff. at paragraph 2, n. 1.

CHI2_2604970.2

## ARGUMENT[2]

### I.   DEFENDANTS AMPLY MEET THE STANDARDS FOR STRIKING THE CHALLENGED PARAGRAPHS

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading material that is immaterial, impertinent or scandalous.  Professors Wright and Miller note the appropriateness of striking scandalous matter from a pleading.  As they state:

> "[S]candalous" matter is that which improperly casts a derogatory light on someone, most typically a party to the action.  It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action.  Nonetheless, the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations.

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, §1382 at 465-66.

Directly on point is the decision by Magistrate Judge Frances in *Cruz v. Oxford Health Plans, Inc.*, No. 03 Civ. 8863 (LTS) (JCF), 2004 U.S. Dist. LEXIS 23264, *1, 4-8 (S.D.N.Y. Nov. 17, 2004)[3], where the District Court granted a motion to strike allegations concerning an alleged sexual affair that had nothing to do with the sexual harassment allegations at issue in the lawsuit.

Similarly, in *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302 (S.D.N.Y. 2001), Judge Sweet granted a motion to strike in part allegations of purported harassing behavior by an individual defendant to other employees who were not, like the plaintiff there, older white men.

---

[2] The facts relevant to this Motion are set forth in the accompanying Norbitz Aff.

[3] Copies of all referenced unreported cases are attached hereto as Exhibit A.

The District Court there also struck their allegations of alleged financial misconduct by that individual defendant as being irrelevant and immaterial to the action.

Here, the purposes served by striking scandalous matter – to avoid prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety – are properly served by granting this Motion. *See* 5C C. Wright et al., FEDERAL PRACTICE AND PROCEDURE, § 1382 at 467-68.

## II.     IN THE ALTERNATIVE, THE CHALLENGED PARAGRAPHS SHOULD BE PLACED UNDER SEAL

Defendants believe that the Challenged Paragraphs are offensive and without redeeming purpose in this litigation. Indeed, Defendants believe that Plaintiff has asserted the Challenged Paragraphs for the express purpose of gaining an improper and unfair advantage in this litigation and, therefore, that they should be stricken. However, even if this Court believes the Challenged Paragraphs should not be stricken, the nature and substance of these allegations warrant placing them under seal. Further, it is appropriate to require that any further reference to these issues in any pleading or subsequent filing also be filed under seal.

The Second Circuit employs a three-step process for determining whether a document should be placed under seal. First, the court must determine whether the at-issue material is a judicial document such that there is a presumption that the public has a right to access to it. Specifically, it has been noted that judicial documents are those which are "relevant to the performance of the judicial function and useful in the judicial process." *Caxton Int'l Ltd. v. Reserve Int'l Liquidity Fund, Ltd.*, No. 09 Civ. 782, 2009 WL 2365246, *1, 2 (S.D.N.Y. July 30, 2009) Second, if the at-issue material is considered to be a judicial document, the court must then determine the weight to be afforded the presumption of access by examining the role the material plays in the court's exercise of its judicial powers (and the corresponding value of such

4

information in connection with the public's monitoring of federal courts for accountability).
*Ibid.* Third, the court must "balance competing considerations" against the presumption of
access and consider the factors weighing in favor of sealing the material, such as "the danger of
impairing law enforcement or judicial efficiency and the privacy interests of those resisting
disclosure." *Ibid.*

Here, an examination of these steps with respect to the Challenged Paragraphs
supports sealing them. First, and as a threshold matter, the Challenged Paragraphs are not a
judicial document inasmuch as they have no bearing on the substance of the claims alleged in the
Complaint and are not relevant to the court's adjudication of Plaintiff's claims. Accordingly,
because the Challenged Paragraphs are not judicial documents, no further consideration is
required to order them sealed. But even if the Court were to determine that they are judicial
material, under step two, because the Challenged Paragraphs are totally irrelevant to the
adjudication of Plaintiff's claims, the presumption of access to such irrelevant material should be
given little weight. Finally, there are significant countervailing interests which weigh in favor of
sealing the Challenged Paragraphs. In particular, the court has an interest in protecting
Defendants from false and prejudicial material in the Complaint, as well as in preventing
Plaintiff from using the Complaint's public accessibility as a vehicle for an improper purpose.
*See In re Kolomoisky*, Civ. No. M19-116, 2006 WL 2404332, *1, 4 (S.D.N.Y. Aug. 18, 2006)
(granting petitioner's motion to seal and explaining that, "[a]lthough the right of public access to
court records is firmly entrenched and well supported by policy and practical considerations, the
right is not absolute. In limited circumstances, courts must deny access to judicial documents-
generally *where open inspection may be used as a vehicle for improper purposes*") (emphasis
added). Here, because the Challenged Paragraphs are nothing more than an improper effort to

inflame and harass Defendants in order to garner a perceived litigation advantage, they should be sealed.

## CONCLUSION

WHEREFORE, Defendants Fred Alger Management, Inc., Fred Alger & Company, Inc. Alger Associates, Inc. and Daniel C. Chung, respectfully pray that this Court grant Defendants' request that the Complaint be sealed pending the hearing on the Motion, grant Defendants' Motion to Strike the Challenged Paragraphs, or, in the alternative, to order the Challenged Paragraphs permanently sealed and all subsequent references to the Challenged Paragraphs in future pleadings and other filings also to be made under seal; and grant such other relief as this Court deems just.

Dated: July 1, 2011

Respectfully submitted,

By: _____

Robert A. Scher
Todd C. Norbitz
Anne B. Sekel
Foley & Lardner LLP
90 Park Avenue
New York, New York  10016-1314
Tel:  (212) 682-7474
Fax:  (212) 682-2329

**OF COUNSEL:**
Bennett L. Epstein
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, Illinois  60654-5313

6

Tel:  (312) 832-4500
Fax:  (312) 832-4700

CHI2_2604970.2

# EXHIBIT A





Positive
As of: Jul 01, 2011

RICHARD CRUZ, Plaintiff, - against - OXFORD HEALTH PLANS, INC.,
Defendants.

03 Civ. 8863 (LTS) (JCF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*2004 U.S. Dist. LEXIS 23264*

November 17, 2004, Decided
November 17, 2004, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted by, Motion to strike granted by, in part, Request denied by, Judgment entered by *Cruz v. Oxford Health Plans, Inc., 2008 U.S. Dist. LEXIS 14053 (S.D.N.Y., Feb. 25, 2008)*

**DISPOSITION:** [*1] Oxford's motion to strike was granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee brought an action for gender discrimination, sexual harassment, and retaliation against defendant employer under Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, and the New York State Human Rights Law, *N.Y. Exec. Law § 290 et seq.* The employer filed a *Fed. R. Civ. P. 12(f)* motion to strike certain allegations from the amended complaint .

**OVERVIEW:** The employer sought to strike allegations about an affair that the employee's supervisor allegedly had with another employee. The court struck the allegations. Although other instances of hostility directed at other employees might lend support to hostile work environment claims, there was no sexual harassment without a showing of adverse effect on the terms and conditions of employment. The employee failed to indicate that the alleged relationship adversely affected his working environment. Since the employee did not learn of the affair until after his employment was terminated, it seemed impossible for it to have had such an effect. The relationship could not be evidence of a pattern of discriminatory conduct because there was no allegation that the affair was anything other than consensual. The court denied the employer's motion to strike allegations concerning the employer's challenge to the employee's unemployment benefits. While the employee apparently ultimately prevailed on his unemployment claim and, thus, might not have suffered any adverse employment action, a motion to strike was not the proper means for testing the sufficiency of the complaint.

**OUTCOME:** The court granted the employer's motion to the extent that the allegations concerning another

2004 U.S. Dist. LEXIS 23264, *1

employee's consensual sexual affair were stricken from the amended complaint, but the court denied the motion to the extent that the allegations concerning the employer's challenge to the employee's unemployment benefits were not stricken.

**CORE TERMS:** stricken, sexual, unemployment benefits, unemployment, sexual harassment, sexual harassment, sexually harassed, retaliation, impertinent, consensual, terminated, retaliated, scandalous, gender, work environment, discriminatory intent, harassment, immaterial, redundant, hostility, manager, hostile, sexual advances, termination

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Strike > Immaterial Matters*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Strike > Redundant Matters*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Strike > Scandalous Matters*
[HN1] Pursuant to *Fed. R. Civ. P. 12(f)*, the court, upon motion made by a party, may order stricken from any pleading any redundant, immaterial, impertinent, or scandalous matter. Motions to strike are disfavored and should be granted only if the allegations in question have no bearing on the litigation.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Coverage & Definitions > General Overview*
[HN2] Although other instances of hostility directed at persons other than the plaintiff may lend some support to a plaintiff's claims of a hostile work environment, there is no sexual harassment without a showing of adverse effect on the terms and conditions of employment.

*Labor & Employment Law > Disability & Unemployment Insurance > Unemployment Compensation > General Overview*
*Labor & Employment Law > Discrimination > Retaliation > General Overview*

[HN3] Where an employee apparently ultimately prevails on his unemployment claim, he does not suffer any adverse employment action.

*Labor & Employment Law > Disability & Unemployment Insurance > Unemployment Compensation > General Overview*
*Labor & Employment Law > Discrimination > Retaliation > General Overview*
[HN4] There is no adverse employment action when plaintiff is awarded unemployment benefits even if defendant opposed plaintiff's unemployment claim.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Strike > General Overview*
[HN5] A motion to strike under *Fed. R. Civ. P. 12(f)* is the appropriate remedy for the elimination of redundant, immaterial, impertinent, or scandalous matter in any pleading, but it is neither an authorized nor a proper way to procure the dismissal of all or part of a complaint.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Strike > General Overview*
[HN6] A motion to strike is not intended for use in determining the sufficiency of any pleading.

**COUNSEL:** For Richard Cruz, Plaintiff: Barbara Matthews, St. James, NY.

For Oxford Health Plans, Inc., Defendant: Jonas Karp, Brown, Raysman Millstein, Felder and Steiner LLP, New York, NY.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** JAMES C. FRANCIS IV

**OPINION**

*MEMORANDUM OPINION AND ORDER*

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

The plaintiff, Richard Cruz, brings this action for gender discrimination, sexual harassment, and retaliation against the defendant, Oxford Health Plans, Inc., ("Oxford"), under Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e et seq.* ("Title VII"), and the New York State Human Rights Law, *New York Executive Law §§ 290 et seq.* Oxford has moved pursuant to *Rule 12(f) of the Federal Rules of Civil Procedure* to strike from the amended complaint [1] (1) allegations about an alleged consensual affair that Mr. Cruz's supervisor supposedly had with an Oxford doctor, and (2) allegations about proceedings before an unemployment commission which led to the denial of Mr. Cruz's unemployment benefits. For the following reasons, Oxford's motion [*2] is granted in part and denied in part.

1  The amended complaint, which is denominated simply as the "Complaint," was filed on October 29, 2004, but had previously been served.

*Background*

In his amended complaint ("Am. Compl."), Mr. Cruz alleges that he was sexually harassed by a manager, Laurie DeRosa, and that he was discriminated against on the basis of his gender because he rejected Ms. DeRosa's sexual advances. (Am. Compl. PP1-2). His theory is that "Ms. DeRosa believed her work environment was a source of a 'dating pool' for her, and that once her advances to plaintiff were spurned, she moved on to other prospects at work." (Memorandum of Law in Opposition to Defendant's Motion to Strike at 2). As circumstantial evidence in support of his allegations that Ms. DeRosa sexually harassed him, Mr. Cruz alleges that:

Through former colleagues at Oxford, plaintiff heard that during the later part of 2002, Ms. DeRosa was terminated from Oxford Health Plans for "gross sexual misconduct," which upon [*3] information and belief, constituted engaging in sexual activity with a medical Director on the premises of Oxford.

(Am. Compl. P51). As Mr. Cruz was discharged in March of 2000, the alleged sexual affair occurred after his termination. (Am. Compl. P8).

Mr. Cruz also alleges that he was retaliated against as a result of his complaints regarding Ms. DeRosa's

sexual advances, his complaints regarding unequal and unfair treatment, and his reports of sexual harassment. (Am. Compl. P3). He alleges that Oxford retaliated in part by challenging his unemployment benefits.

After such termination [from Oxford], and after plaintiff's filed charges with the New York State Division of Human Rights, plaintiff's unemployment benefits were challenged and terminated by defendant.

Only after a letter was written by plaintiff's attorney to the Unemployment division outlining plaintiff's discrimination charges and defendant's denial of benefits as further retaliation towards him were such benefits reinstated.

(Am. Compl. PP49-50).

*Discussion*

A. *Legal Standard*

[HN1] Pursuant to *Rule 12(f) of the Federal Rules of Civil Procedure*, the court "upon motion made by a party [*4] . . . may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored, and should be granted only if the allegations in question have no bearing on the litigation. *See Sunshine Cellular v. Vanguard Cellular Systems, Inc., 810 F. Supp. 486, 499-500 (S.D.N.Y. 1992); Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 135 (S.D.N.Y. 1992).*

B. *Application of the Legal Standard to Oxford's Motion*

1. *Sexual Affair*

Mr. Cruz's allegations concerning Ms. DeRosa's alleged sexual affair with a medical director on the premises of Oxford must be stricken. [HN2] Although "other instances of hostility directed at persons other than the plaintiff may lend some support to a plaintiff's claims of a hostile work environment, . . . there is no sexual harassment without a showing of adverse effect on the terms and conditions of employment." *Parrish v. Sollecito, 257 F. Supp. 2d 700, 01 Civ. 5420, 2002 WL 1072227, at *2 (S.D.N.Y. May 24, 2002)* (striking plaintiff's allegation that a manager who harassed her had

a sexual relationship with an employee in another office as "scandalous, . . . impertinent[, [*5] ] and of extremely unlikely relevance"). This case is analogous to *Parrish*, as Mr. Cruz has failed to indicate that Ms. DeRosa's alleged relationship adversely affected his working environment. Since Mr. Cruz did not learn of the affair until after his employment was terminated, it seems impossible for it to have had such an effect. Further, as in *Parrish*, "nothing suggests that the relationship . . . constitutes . . . an instance of hostility or harassment against [the employee involved]." *Id.* 257 F. Supp. 2d 700 [WL] at *2. Also, the relationship cannot be evidence of a pattern of discriminatory conduct, because there is no allegation that the affair was anything other than consensual.

Mr. Cruz cites cases in which the court declined to strike allegations concerning sexual harassment after the claim of sexual harassment claim was dismissed. *See Eaton v. American Media Operations, 1997 U.S. Dist. LEXIS 46, 96 Civ. 6158, 1997 WL 7670, at *5 (S.D.N.Y. Jan. 9, 1997)* (allegations that president of defendant company sexually harassed plaintiff may be admissible to show general gender bias and therefore to prove discriminatory intent, even though sexual harassment claim was dismissed); [*6] *Crespo v. N.Y. City Transit Auth., 2002 U.S. Dist. LEXIS 2977, 01-CV-0671, 2002 WL 398805, at *12 (E.D.N.Y. Jan. 7, 2002)* (allegations concerning dismissed harassment and hostile work environment claims not stricken because they might have bearing on discriminatory intent which plaintiff must establish for sex and national origin discrimination claims). These cases are distinguishable from the present case, however, because they involve actions alleged to have affected the plaintiffs' workplace environment, unlike Mr. Cruz's allegations with respect to Ms. DeRosa's alleged affair.

Accordingly, paragraph 51 is stricken from Mr. Cruz's amended complaint.

2. *Unemployment Compensation Proceedings*

In paragraphs 49 and 50 of his amended complaint, Mr. Cruz alleges that Oxford retaliated against him by opposing his application for unemployment benefits. It may be that, particularly [HN3] because Mr. Cruz

apparently ultimately prevailed on his unemployment claim, he did not suffer any adverse employment action. *See Fairbrother v. Connecticut Department of Mental Health and Addiction Services, 306 F. Supp. 2d 154, 165 (D. Conn. 2003)*; *Barriera v. Bankers Trust, 2003 U.S. Dist. LEXIS 18601, No. 98 Civ. 3641, 2003 WL 22387099, [*7] at *7-8 (S.D.N.Y. Oct. 20, 2003)* [HN4] (no adverse employment action when plaintiff was awarded unemployment benefits even if defendant opposed plaintiff's unemployment claim). However, [HN5] "a motion to strike under *Rule 12(f)* is the appropriate remedy for the elimination of redundant, immaterial, impertinent, or scandalous matter in any pleading," but "it is neither an authorized nor a proper way to procure the dismissal of all or part of a complaint." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 644 (2d ed. 1990) (footnote omitted). Specifically, [HN6] "the motion to strike . . . is not intended for use in determining the sufficiency of any pleading." *Id.* at 644 n.1 (quoting Charles E. Montgomery, *Changes in Federal Practice Resulting from the Adoption of the New Federal Rules of Civil Procedure,1 F.R.D. 337, 345 (1940))*.

Therefore, the plaintiff's retaliation claim may be challenged on summary judgment, but it is not subject to being stricken.

*Conclusion*

For the reasons set forth above, Oxford's motion is granted to the extent that the allegations concerning Ms. DeRosa's consensual sexual affair are stricken from the [*8] amended complaint, but denied to the extent that the allegations concerning Oxford's challenge to the plaintiff's unemployment benefits are not stricken.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York

November 17, 2004

Westlaw.

Slip Copy, 2009 WL 2365246 (S.D.N.Y.)
**(Cite as: 2009 WL 2365246 (S.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
CAXTON INTERNATIONAL LIMITED, Caxton
Equity Growth Holdings, LP, individually, and de-
rivatively on behalf of the Reserve International Li-
quidity Fund, Ltd., Plaintiffs,
v.
RESERVE INTERNATIONAL LIQUIDITY
FUND, LTD., Reserve Management Co., Inc., Res-
rv Partners, Inc., the Reserve Fund, Bruce R. Bent,
Bruce R. Bent II, and Arthur Bent III, Defendants.

No. 09 Civ. 782(PGG).
July 30, 2009.

*OPINION AND ORDER*
PAUL G. GARDEPHE, District Judge.
   **\*1** Defendants Reserve International Liquidity
Fund, Ltd. (the "Fund"), Reserve Management Co.,
Inc. ("RMCI"), Resrv Partners, Inc., The Reserve
Fund (the "Reserve"), Bruce R. Bent, Bruce R.
Bent II, and Arthur Bent III's (collectively,
"Defendants") move to file under seal certain ma-
terials associated with Plaintiffs' remand motion,
including portions of the state court-appointed Tem-
porary Supervisor of the Fund and documents con-
taining information or statements from those re-
ports. Defendants also seek to file under seal docu-
ments in the remand submissions that disclose the
names of current and former Fund investors.
(Def.Br.8-9) Plaintiffs Caxton International Limited
and Caxton Equity Growth Holdings, LP oppose
Defendants' motion.

   For the reasons set forth below, Defendants'
motion is GRANTED as to the names of current
and former investors, but is otherwise DENIED.

### BACKGROUND
   Following the October 6, 2008 filing of this ac-
tion in state court, Plaintiffs and Defendants ex-

ecuted a Confidentiality Stipulation and [Proposed]
Protective Order, dated October 28, 2008 (the
"Confidentiality Stipulation").[FN1] (Eaton Decl.,
Ex. A) On November 6, 2008, the parties stipulated
to the appointment of Denis O'Connor of Alix Part-
ners LLP as "Temporary Supervisor" of the Fund,
which the state court so-ordered on November 7,
2008 (the "Supervisor Stipulation and Order"). (*Id.,*
Ex. B; *see* Eaton Decl. ¶ 4) The Supervisor Stipula-
tion and Order required O'Connor to prepare for the
state court and the parties a "Preliminary Report"
setting forth:

> FN1. Although Defendants and the state
> court have referred to the October 28, 2008
> Confidentiality Stipulation as a
> "Confidentiality Stipulation and Protective
> Order," the "So Ordered" signature line of
> that document is blank. (*See* Eaton Decl.,
> Ex. A, at 11) Accordingly, this Court will
> refer to this document as the
> "Confidentiality Stipulation."

(A) for the period of September 12, 2008 through
the present, verification of (i) all Fund assets ...;
(ii) the number and type of Fund shares held by
each investor; (iii) all transfers, involving assets
or cash, into or out of any Fund accounts main-
tained by the [D]efendants; (iv) all purchases or
sales of securities by the Fund; (v) all redemption
requests received by the Fund including, without
limitation, verification of the date and time of
each redemption request, and the amount of
money returned to Fund shareholders pursuant to
each such redemption request; and

(B) [an] examination of the Fund's policies and
procedures with respect to redemptions, calcula-
tions of the Fund's NAV and the Fund's internal
controls. (Eaton Decl., Ex. B, ¶¶ 2-3)

The Supervisor Stipulation and Order also re-
quired O'Connor to provide a weekly report to
the Court and parties setting forth: "(i) the Fund's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2365246 (S.D.N.Y.)
**(Cite as: 2009 WL 2365246 (S.D.N.Y.))**

cash balance; (ii) details of the Fund's assets, and [their] current market value ...; (iii) the number of shares currently outstanding; and (iv) any other information concerning the management and operations of the Fund, or the status of any partial distributions of the Fund's cash holdings, that [he] deems appropriate (the 'Weekly Report')." ( *Id.* ¶ 5(C))

The Supervisor Stipulation and Order provides that, "Mr. O'Connor's Weekly Reports to the Court and the parties shall be designated 'Confidential' and shall be subject to the terms of the parties' Confidentiality Stipulation." (*Id.* ¶ 12) The Confidentiality Stipulation provides that all material designated as "Confidential" shall be disclosed only to: the Court; the parties and their outside counsel; other persons involved in the litigation; and outside counsel to investors in the Fund-provided that such counsel execute the Endorsement annexed to the Confidentiality Stipulation-and their clients. (Eaton Decl., Ex. A, ¶ 7) The Confidentiality Stipulation further provides that if any party seeks to file with the Court material that has been designated as "Confidential," that party shall request that the material "be held under seal until further order of the Court." (*Id.* ¶ 5(e))

**\*2** Defendants removed this action to this Court on January 27, 2009, and Plaintiffs subsequently moved to remand this action to state court. In a letter dated February 26, 2009, Plaintiffs alerted this Court to the fact that certain documents relevant to their remand motion had been filed under seal in state court. (Letter of Mark P. Ressler to Court dated Feb. 26, 2009, at 1-2). Plaintiffs made clear in their letter, however, that they did not believe that these documents contained confidential information and that they had in fact objected to defendants' assertions of confidentiality in state court. (*Id.*) This Court declined to enter a sealing order at that time, finding that it could not make the "specific, on the record findings" necessary to support a sealing order under *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir.2006).

(Mar. 19, 2009 Order at 3-4)

Defendants now seek an order requiring that the following documents (the "Disputed Materials") be filed under seal: (1) the Temporary Supervisor's Preliminary Report (Hanin Decl. in Supp. of Pltf. Remand Mot. ("Hanin Decl."), Ex. 14); (2) the draft First Amended Complaint (Hanin Decl., Ex. 1; Eaton Decl. in Supp. of Def. Opp. to Remand Mot., Ex. 5) (3) a December 12, 2008 letter from Plaintiffs' counsel to the state court (Hanin Decl., Ex. 15); (4) a January 15, 2009 letter from Plaintiffs' counsel to the state court (Hanin Decl., Ex. 18); and (5) the parties' remand motion papers. (Def. Br. 1 n. 1) While Defendants' papers are not entirely clear, it appears that they are seeking a sealing order concerning these documents because they contain information obtained and/or reported by the Temporary Supervisor. (Eaton Decl. ¶¶ 14-15) Defendants also seek to file under seal documents that disclose the names of current and former investors in the Fund. (*Id.* at ¶ 14; Def. Br. 8-9)

## DISCUSSION
### I. *LEGAL STANDARD FOR SEALING*

"The common law right of public access is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir.2006). "The presumption of access is based on the need for federal courts, although independent-indeed, particularly because they are independent-to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* (quoting *United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir.1995)).

The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal. First, a court must determine whether the presumption of access attaches. A presumption of access attaches to any item that constitutes a "judicial document"-*i.e.,* an "item ... relevant to the performance of the judicial function and useful in the judicial process." *Lugosch,* 435 F.3d at 119 (quotation omitted). Second, if the court determines that the item to be sealed is a judicial doc-

Slip Copy, 2009 WL 2365246 (S.D.N.Y.)
**(Cite as: 2009 WL 2365246 (S.D.N.Y.))**

ument, the court must then determine the weight of the presumption of access. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quotation omitted). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quotation omitted). Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." *Id.* at 120. (quotation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (quotation omitted).

*\*3* The Second Circuit has further explained that "[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (quoting *In re New York Times Co.,* 828 F.3d 110, 116 (2d Cir.1987)). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.* (quotation omitted).

## II. *LEGAL ANALYSIS*

Defendants argue that their sealing motion should be granted because (1) Plaintiffs' submission of the Disputed Materials in connection with their remand motion was done in bad faith; (2) Plaintiffs entered into a binding stipulation promising to maintain the Disputed Materials as confidential, and Defendants relied on that stipulation in producing the information in question; and (3) investors' names should be redacted from the Disputed Materials in order to protect their privacy. The Court considers each of these arguments below.

### A. *Plaintiffs' Alleged Bad Faith*

Defendants argue that Plaintiffs attached the Disputed Materials to their remand motion papers

in bad faith, that this information is "of absolutely no consequence to Plaintiff's remand motion," and that the Temporary Supervisor's reports are "simply irrelevant" and of "no value" to this Court in resolving Plaintiffs' remand motion. Defendants further claim that Plaintiffs' submission of this material was merely a "tactic designed to avoid [Plaintiffs'] confidentiality obligations under the stipulation." (Def.Br.8) A review of the Disputed Materials demonstrates, however, that each document is relevant to this Court's determination of Plaintiffs' remand motion.

For example, in their remand motion Plaintiffs argue that their draft amended complaint raises no federal questions and contains no federal issues. (Pltf. Remand Br. 1) Obviously, the draft amended complaint must be examined in considering that argument. Plaintiffs have attached the Temporary Supervisor's Preliminary Report (Hanin Decl., Ex. 14) as an exhibit to their remand motion because this document provides the basis for a number of the allegations set forth in the draft amended complaint. The December 12, 2008 and January 15, 2009 letters from Plaintiffs' counsel to the state court (Hanin Decl., Exs. 15, 18)-and the exhibits thereto-were submitted to demonstrate the state court's indepth involvement in this case. Finally, there can be no dispute that the remand motion papers themselves are of consequence to this Court's adjudication of whether it has subject matter jurisdiction.

This Court concludes that the Disputed Materials are "judicial documents" because they are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch,* 435 F.3d at 119 (quotation omitted). More specifically, these documents are relevant to resolution of Plaintiffs' remand motion. Because the Disputed Materials will "directly affect" this Court's adjudication of this case and resolution of Plaintiffs' remand motion, there is a strong presumption of public access to these submissions. *See, e.g., Standard Inv. Chartered, Inc. v. National Ass'n of Sec. Dealers, Inc .,* No. 07 Civ.2014(SWK), 2008 WL

Slip Copy, 2009 WL 2365246 (S.D.N.Y.)
**(Cite as: 2009 WL 2365246 (S.D.N.Y.))**

199537, at * 16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents and are thus subject to a strong presumption of access under the First Amendment."). To rebut the strong presumption of access here, Defendants must offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.*

*4 Defendants do not explain how the information at issue here satisfies the *Lugosch* standard, but instead contend that sealing is necessary because Plaintiffs-in entering into the Supervisor Stipulation and Order-waived for all time their right to contend that the information contained in the Temporary Supervisor's reports was not confidential. (Def. Br. 2; Def. Reply Br. 2) As discussed below, this is not a reasonable interpretation of the Supervisor Stipulation and Order, because that document is explicitly "subject to the terms of the parties' Confidentiality Stipulation." (Eaton Decl., Ex. B, ¶ 12) The Confidentiality Stipulation, in turn, explicitly contemplates the de-designation of documents designated as confidential, and in any event recognizes that "[u]ltimately, the appropriate treatment of Confidential Information will be determined by the presiding trial court." (Eaton Decl., Ex. A, ¶¶ 10, 13) Accordingly, in producing the information gathered and reports prepared by the Temporary Supervisor, Defendants could not have had a reasonable expectation that this material would necessarily remain confidential.

**B. *Alleged "Binding" Nature of Supervisor Stipulation and Order***

Defendants argue that the Supervisor Stipulation and Order makes confidential for all time any product of the Temporary Supervisor's investigation, including his reports and information derived therefrom. (Def.Br.5-7) "Absent the confidentiality provisions in the Stipulation," Defendants claim that they "would not have agreed to Mr. O'Connor's appointment and would not have been under any obligation to provide him with the information he has received." (*Id.* at 6) Defendants argue that seal-

ing will thus "effectuate the parties' intentions" and "preserve the confidentiality that was a precondition for the creation of the reports themselves." (*Id.*)

"It is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.' " *AT & T Corp. v. Sprint Corp.,* 407 F.3d 560, 562, (2d Cir.2005) (quoting *S.E.C. v. TheStreet.com,* 273 F .2d 222, 230 (2d Cir.2001)). "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.' " *AT & T Corp.,* 407 F.3d at 562 (quoting *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir.1979)).

"On the other hand, some protective orders may not merit a strong presumption against modification." *TheStreet.com,* 273 F .2d at 230. "For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties[;] [i]ndeed, in such circumstances reliance may be unreasonable." *Id.* at 230-31 (concluding that, "[w]here a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order."). Thus, "the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable." *Lugosch,* 435 F.3d at 126 (questioning how defendants could "reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret[,]" given existence of provision stating that "Confidentiality Order shall not prevent anyone from applying to the Court for relief therefrom").

*5 Here, Defendants have not shown that their alleged continued reliance on the Supervisor Stipulation and Order is reasonable. "[T]he Second Circuit has applied the reasonable reliance principle when parties claim reliance on an *already existing* protective order." *Standard Inv. Chartered, Inc. v.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2365246 (S.D.N.Y.)
**(Cite as: 2009 WL 2365246 (S.D.N.Y.))**

*National Ass'n of Sec. Dealers, Inc.,* No. 07 Civ.2014(SWK), 2007 WL 2790387, at *13 (S.D.N.Y. Sept. 16, 2007) (emphasis in original) (collecting cases). While the Supervisor Stipulation and Order provides that the Temporary Supervisor's "Weekly Reports ... shall be designated "Confidential" and shall be subject to the terms of the parties' Confidentiality Stipulation and Protective Order" (Eaton Decl., Ex. B, ¶ 12), no such order was ever entered by the state court or by this Court.

Moreover, the Confidentiality Stipulation does not support Defendants' argument that the Supervisor Stipulation and Order was intended to make confidential for all time the information gathered by and the reports prepared by the Temporary Supervisor. As an initial matter and as noted above, the Supervisor Stipulation and Order was explicitly made subject to the Confidentiality Stipulation. The Confidentiality Stipulation explicitly provides a mechanism to de-designate documents that a party has designated as confidential. While Defendants contend that the de-designation provision of the Confidentiality Stipulation applies only where "any receiving party ... disagrees with the designation by the Producing Party" (Eaton Decl., Ex. A, ¶ 10), and that the provision does not apply here because *"both parties agreed,* through the [Supervisor] Stipulation, to designate the Reports as Confidential" (Def. Reply Br. 3-4) (emphasis in original), Defendants' interpretation is not reasonable. The de-designation provision (Eaton Decl., Ex. A, ¶ 10) states that "[i]f, *at any time* after the designation of Discovery Material as 'Confidential' any receiving party ... disagrees with the designation by the Producing Party," that disagreement should be brought to the attention of the Producing Party, a meet and confer should take place, and if the dispute cannot be resolved, the matter should be brought to the Court. (emphasis added) As noted above, the Confidentiality Stipulation also explicitly acknowledges that-whatever position the parties take-the Court will make the final determination as to whether a document will remain confidential. (Eaton Decl., Ex. A, ¶ 13) In short, the waiver concept pressed by

Defendants is not reflected in the Confidentiality Stipulation and in any event would not be binding on this Court.

Defendants' interpretation of the de-designation provision is also undermined by defense counsel's prior acknowledgement that this provision applies to information obtained and reports prepared by the Temporary Supervisor, and that the confidentiality accorded to that material is of a "preliminary" nature:

MR. NETZER: ... [T]here is a mechanism for-if under the order to de-designate confidential material, which Mr. Ressler with respect to some other information has already availed himself of. There are mechanisms in there.

*6 ...

I think with respect to the temporary supervisor, I believe that the situation has benefitted [sic] from the fact that there is at least preliminary confidentiality. (Pltf. Ltr., Ex. 1 (Nov. 24, 2008 Tr. 65:7-21))

*See Allen v. City of New York,* 420 F.Supp.2d 295, 301 (S.D.N . Y.2006) (reliance would not have been reasonable because protective order permitted plaintiffs to object to confidentiality designation of document produced to them, "thereby triggering an obligation by defendants to move for an order approving the designation").

Although not dispositive of the issue, it is also worth noting that the state court judge who so-ordered the Supervisor Stipulation and Order disagrees with Defendants' interpretation:

THE COURT: ... despite your statements, *I don't agree that this is an ironclad contract that you can only overturn by fraud.* I don't think that is what is going on here.

What I think is that you entered into a stipulation to find a way to work out so that Mr. O'Connor would be appointed and review some of these

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2365246 (S.D.N.Y.)
**(Cite as: 2009 WL 2365246 (S.D.N.Y.))**

documents which I think has been helpful and has led up to this imminent partial distribution.

We did mark them-we did say that his weekly reports would be designated confidential, and as Mr. Ressler points out, it says in paragraph 12: It shall be subject to the terms of the parties' confidentiality stipulation and protective order.

*So it makes reference to the other document and that document makes provisions on how it would be possible to ask for a lifting of the confidentiality.* (Pltf. Ltr., Ex. 2 (Jan. 16, 2009 Tr. 56:14-57:8) (emphasis added))

In sum, the Supervisor Stipulation and Order does not grant permanent confidentiality to all information obtained by and reports prepared by the Temporary Supervisor, and any alleged expectation by Defendants that these materials would remain permanently confidential is not reasonable.[FN2]

> FN2. Defendants also argue that the public filing of Disputed Materials would constitute an "end-run" around the "mandatory stay of discovery" under the Private Securities Litigation Reform Act ("PSLRA") because it would enable "numerous securities plaintiffs who have sued Defendants [to] gain access to discovery to which they are not entitled under the PSLRA's mandatory stay of discovery." (Def.Br.7) Defendants cite no law in support of this argument, and it misconstrues the inquiry before this Court. Because the Disputed Materials are relevant to Plaintiffs' remand motion, the issue is whether Defendants have met their heavy burden under *Lugosch* to demonstrate that public access to these materials should be denied.

### C. *Investor Names Should Remain Confidential*

Defendants contend that the Confidentiality Stipulation requires that investor names be maintained as confidential. (Def Br. at 8-9) Plaintiffs do not address this argument in their opposition, but

have previously stated that "the names of investors ... in [their] amended complaint ... [a]rguably ... should remain confidential because they're investors in a fund" and "haven't been accused of anything." (Netzer Decl., Ex. 1 (Jan. 16, 2009 Tr. 60:7-14))

Under the Confidentiality Stipulation, "Confidential Information" includes "information reflecting the identity of actual or potential investors." (Eaton Decl., Ex. A, ¶ 3) In similar circumstances, courts in this District have allowed parties to file under seal documents containing such identifying information. *See Professional Sound Servs., Inc.,* No. 02 Civ. 8428(DC), 2003 WL 22097500, at *1 (S.D.N.Y. Sept. 10, 2003) (permitting plaintiff to file first amended complaint under seal "to keep confidential the names of certain customers" and thereafter filing redacted version, "deleting the names of [plaintiff's] allegedly lost customers"); *Druck Corp. v. The Macro Fund (U.S.) Ltd.,* No. 02 Civ. 6163(AGS)(DFE), 2002 WL 31415699, at *1 (S.D.N.Y. Oct. 28, 2002) (directing parties to file motion papers under seal- "to the extent they identify any non-party investor"-and file copies "in the public court files with the minimum amount of deletions necessary to protect the identity of the non-party investors").

*7 Because there is no evidence that the identities of investors "directly affect the adjudication" of whether subject matter jurisdiction exists over this action, *Lugosch,* 435 F.3d at 119 (quotation omitted), the parties are directed to file their motion papers under seal and then, to the extent those papers identify any non-party investor, file copies in the public court files with the minimum amount of redactions necessary to protect the identity of non-party investors.

### *CONCLUSION*

For the reasons stated above, Defendants' motion to file under seal is GRANTED as to the names of current and former investors, but is otherwise DENIED.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2365246 (S.D.N.Y.)
**(Cite as: 2009 WL 2365246 (S.D.N.Y.))**

Accordingly, it is hereby ORDERED that:

(1) The parties' unredacted remand motion papers shall be filed in the Clerk's Office and placed under seal;

(2) Only this Court and counsel of record shall have access to the parties' unredacted remand motion papers;

(3) Plaintiffs shall serve this Court and counsel of record with copies of their unredacted reply papers on their remand motion; and

(4) The parties shall electronically file redacted versions of their remand motion papers with the minimum amount of redactions necessary to protect the identity of non-party current and former investors in the Reserve International Liquidity Fund.

The Clerk of the Court is directed to terminate Defendants' sealing motion (Docket No. 11).

SO ORDERED.

S.D.N.Y.,2009.
Caxton Intern. Ltd. v. Reserve Intern. Liquidity Fund, Ltd.
Slip Copy, 2009 WL 2365246 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2404332 (S.D.N.Y.)
**(Cite as: 2006 WL 2404332 (S.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In the Matter of the Application of Igor KO-
LOMOISKY, Petitioner,
FOR THE DEPOSITION OF AND DOCUMENTS
FROM RENOVA, INC. and Victor Vekselberg for
Use in a Proceeding Pending in the Arbitrazh Court
of the City of Moscow, Russia, Case No.
A40-2110/06-15-141, Between Renova Manage-
ment AG, Petitioner, and Editorial Board of News-
paper Vedomosti and Mr. Igor Kolomoisky, Re-
spondents.

No. M19-116.
Aug. 18, 2006.

MEMORANDUM DECISION AND ORDER
ROBINSON, J.
*1 Igor Kolomoisky ("Petitioner") (1) applied
to this Court for discovery in aid of a foreign pro-
ceeding and (2) moved to have the Petition be filed
under seal. For the reasons set forth below, Peti-
tioner's application is granted in part and denied in
part and Petitioner's motion is granted.

*I. Background*
The following is a brief description of the facts.
Additional facts will be introduced throughout the
opinion.

On March 30, 2006, three companies, Athina
Investments Ltd., Varkedge Ltd., and Wisewood
Holdings Ltd. (collectively, the "Massachusetts
Plaintiffs"), each beneficially owned by Petitioner,
filed a RICO action in the District Court of Mas-
sachusetts (the "Massachusetts Action") against
Victor Vekselberg ("Vekselberg") and other de-
fendants (collectively, the "Massachusetts Defend-
ants"). The Massachusetts Plaintiffs are sharehold-
ers of the Nikopol Ferroalloy Plant ("Nikopol").
The Massachusetts Plaintiffs allege that, *inter alia,*

upon information and belief, Vekselberg paid up to
$25 million to another Massachusetts Defendant to
bribe Ukrainian officials to prevent the deprivatiza-
tion of Nikopol by the Ukrainian government.

On March 31, 2006, the Vedemosti newspaper
("Vedemosti"), the Russian equivalent of the Wall
Street Journal or the Financial Times, published an
article about the Massachusetts Action. The article
quotes allegations about Vekselberg that were in
the complaint filed in the Massachusetts Action.

Because of the article, on April 11, 2006, Ren-
ova Management AG (" Renova Management")
filed a defamation suit in Moscow (the "Moscow
Action") against Petitioner and the board of editors
of Vedemosti.FN1 In the Moscow Action, Renova
Management is seeking to recover 3 billion rubles
(approximately $110 million) from Petitioner.

> FN1. On August 2, 2006, the court in the
> Moscow Action set a hearing date of Au-
> gust 30, 2006.

Renova Management, which is a Swiss com-
pany, manages the Renova group of companies
("Renova Group"). Vekselberg is the main share-
holder of the Renova Group. Renova, Inc.
("Renova"), which is located in New York City and
incorporated in New York, is a part of the Renova
Group.

From this Court, Petitioner seeks an order (1)
permitting discovery of Renova and Vekselberg to
obtain documents in their possession, custody, or
control; (2) to take the deposition of Vekselberg;
and (3) to depose the relevant person(s) associated
with Renova to obtain evidence for use in Petition-
er's defense in the Moscow Action.

*II. Discussion*
A. Petition for Discovery
Section 1782(a) provides that "[t]he district
court of the district in which a person resides or is
found may order him to give his testimony or state-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2404332 (S.D.N.Y.)
**(Cite as: 2006 WL 2404332 (S.D.N.Y.))**

ment or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation ." 28 U.S.C. § 1782(a) (2006). Accordingly, a district court may grant a Section 1782 request "where '(1) ... the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) ... the discovery [is] for use in a proceeding before a foreign tribunal, and (3) ... the application [is] made by a foreign or international tribunal or any interested person." ' *Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 83 (2d Cir.2004) (quoting *In re Application of Esses,* 101 F.3d 873, 875 (2d Cir.1996)). " '[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." ' *Schmitz,* 376 F.3d at 83-84 (quoting *In re Application of Metallgesellschaft AG,* 121 F.3d 77, 78 (2d Cir.1997)).

**\*2** A district court must exercise this discretion " 'in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts....' " *Schmitz,* 376 F.3d at 84 (quoting *In re Metallgesellschaft,* 121 F.3d at 79). The Supreme Court has outlined four factors to assist district courts in determining whether to grant a discovery request under Section 1782:(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the discovery request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264-65 (2004).

### 1. Renova

Renova's sole argument is that it does not have any responsive discovery to provide to Petitioner. Regardless, as explained below, Petitioner is entitled to discovery of Renova.

Renova does not contest that it meets the threshold statutory requirements of Section 1782. The parties agree that Renova is located in the Southern District of New York. The discovery Petitioner seeks is for use in the Moscow Action, a foreign proceeding. Petitioner is an interested person as he is a respondent in the Moscow Action.

Moreover, the discretionary factors also suggest that this Court should permit discovery. Renova is not a participant in the foreign proceeding. There is no evidence that the Russian government or the court in which the Moscow Action is occurring opposes Petitioner's discovery request. There is also no indication that Petitioner's request is an attempt to circumvent foreign proof-gathering restrictions or other policies. Finally, Petitioner's discovery request is not "unduly intrusive or burdensome."

Renova's claim-that it does not have responsive discovery to provide Petitioner-is not a ground upon which this Court is willing to deny Petitioner's Section 1782 request. If Renova truly has no information to provide, Renova may respond accordingly to Petitioner's subpoena. Petitioner's application for discovery from Renova is granted.

### 2. Vekselberg

Vekselberg argues that Petitioner's discovery request should be denied because Petitioner has not met the threshold statutory requirements under Section 1782. Specifically, Vekselberg asserts that he does not reside in the Southern District of New York.[FN2]

> FN2. Petitioner does not assert that Vekselberg is found in the Southern District of New York.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2404332 (S.D.N.Y.)
(Cite as: 2006 WL 2404332 (S.D.N.Y.))

The statute itself does not define the term "resides." Moreover, the parties did not submit, nor could this Court find, any cases in this Circuit purporting to construe the term in the context of Section 1782.

**\*3** It is not necessary, however, for this Court to precisely delineate the meaning of "resides" in Section 1782 because we do not have sufficient evidence to find that Vekselberg resides in New York under any definition of the word.[FN3] The only affirmative evidence Petitioner was able to provide was (1) Vekselberg's wife and son reside in Manhattan, in an apartment in her name; (2) a telephone line into that apartment in Vekselberg's name;[FN4] and (3) Vekselberg's passport shows that he spent ten to twelve days in the United States in January and February 2006.[FN5] That Vekselberg did not dispute the service of process in the Massachusetts Action, which was made at his wife's apartment in New York, does not constitute an admission that he resides there. There may be a host of reasons why Vekselberg, and his attorney(s), decided not to contest service. Further, Vekselberg asserts that he does not own any property in this district. Petitioner was not able to provide any current information to dispute that assertion. Finally, Vekselberg does not file a New York or United States tax return, even though Vekselberg's wife files an individual tax return in New York.[FN6] Accordingly, this Court cannot, from the evidence before us, conclude that Vekselberg resides in New York. *See In re Microsoft Corp.,* 428 F.Supp.2d 188, 193 (S.D.N.Y.2006) (finding that a Dutch national did not reside in New York for the purposes of Section 1782 because he resided in Brussels and worked full time in his firm's Brussels office even though he was a partner at a New York firm and a member of the New York bar).

FN3. As the Second Circuit has observed, " 'resides' can mean either 'residence' or 'domicile'...." *United States v. Venturella,* 391 F.3d 120, 125 (2d Cir.2004). Further, "despite the generally distinct meanings of

'residence' and 'domicile,' those terms 'may have an identical or a variable meaning depending upon the nature of the subject-matter of the statute as well as the context in which the words are used.' " *Id.* at 125 n. 6 (2d Cir.2004) (quoting *Perkins v. Guaranty Trust Co. of New York,* 274 N.Y. 250, 259, 8 N.E.2d 849 (1937)).

FN4. Vekselberg asserts that he does not have any utilities in his name in New York. This Court will assume, without deciding, that there is a telephone line in Vekselberg's wife's apartment that is in Vekselberg's name.

FN5. Petitioner argues that Vekselberg did not represent that the photocopy of his passport reflects all of the time he has spent in the United States since October, 2005, which is when his current passport was issued to him. Petitioner, however, offers no evidence to substantiate its implied argument that Vekselberg has made other travel into the United States. Without any support for this argument, this Court is in no position to conclude that other documentation exists.

FN6. The parties dispute whether Vekselberg is a permanent resident of the United States. This Court does not need to resolve the dispute because his status as a permanent resident of the *United States* has no bearing on whether Vekselberg resides in the *Southern District of New York.*

In holding that Petitioner provided insufficient evidence for this Court to find that Vekselberg resides in this district, we are not finding that Vekselberg does not reside here. In fact, there are legitimate questions as to whether he resides here. For example, Vekselberg did not provide an affidavit stating that he does not reside here. This Court, however, simply cannot find, from the evidence before us, that there is a sufficient basis to determine

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2404332 (S.D.N.Y.)
**(Cite as: 2006 WL 2404332 (S.D.N.Y.))**

that Vekselberg resides in this district. Moreover, despite Petitioner's request, we will not order Vekselberg to submit to limited discovery on the issue of where Vekselberg resides to enable us to determine whether he should be subject to broader discovery.

In the alternative, Petitioner argues that regardless of where Vekselberg resides, Petitioner is entitled to depose him because he is a managing agent of Renova. Courts in this district typically look to five factors in considering whether a person is a managing agent:

1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation.

**\*4** *JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.,* 220 F.R.D. 235, 237 (S.D.N.Y.2004). The only fact that Petitioner has brought to this Court's attention to support his argument is that Vekselberg is the controlling shareholder of the Renova Group. Standing alone, that fact is insufficient. Moreover, Petitioner did not provide any case to support his assertion. Finally, Petitioner did not demonstrate how Vekselberg met the five-factor test. Rather, Petitioner put the test in a footnote and concluded, that "obviously" Vekselberg meets each of the factors. In short, Petitioner has not established that Vekselberg is a managing agent of Renova.

B. Motion To File Under Seal

Petitioner also asks that this Court permit the Petition, including the exhibits annexed thereto, to be filed under seal. Petitioner is concerned that the information contained in the Petition will be used against him in the Moscow Action.

"Although the right of public access to court records is firmly entrenched and well supported by policy and practical considerations, the right is not absolute. In limited circumstances, courts must deny access to judicial documents-generally where open inspection may be used as a vehicle for improper purposes." *In re Orion Pictures Corp.,* 21 F.3d 24, 27 (2d Cir.1994) (citations omitted).

In light of the allegations in the Moscow Action, which appears to have grown out of the complaint in the Massachusetts Action, Petitioner has legitimate concerns that the documents in this matter will be used for an improper purpose. Moreover, neither Vekselberg nor Renova opposed Petitioner's motion. Accordingly, Petitioner's motion to file this Petition under seal is granted.

*III. Conclusion*
For the reasons set forth above, Petitioner's application for discovery is granted in part and denied in part. Petitioner's motion to seal is granted.

It is hereby:

Ordered that Petitioner may serve a subpoena upon Renova within two days of this Order, which may be delivered to its attorneys, Dewey Ballantine, 1301 Avenue of the Americas, New York, N.Y. 10019-6092, requesting that Renova produce the documents described in the subpoena, including the exhibits annexed thereto, no later than August 25, 2006; and it is further

Ordered that Petitioner may serve a subpoena upon Renova within two days of this Order, which may be delivered to its attorneys, Dewey Ballantine, 1301 Avenue of the Americas, New York, N.Y. 10019-6092, requesting the attendance of Renova at a deposition of no more than eight hours

Not Reported in F.Supp.2d, 2006 WL 2404332 (S.D.N.Y.)
**(Cite as: 2006 WL 2404332 (S.D.N.Y.))**

(or sixteen hours if the witness chooses to testify in a language other than English) on a date as the parties may agree, but, in any event, no later than August 25, 2006; and it is further

Ordered that Peititoner's motion to seal is granted and that the Clerk of the Court shall file the Petition, including the exhibits annexed thereto, under seal.

*It is so ordered.*

S.D.N.Y.,2006.
In re Kolomoisky
Not Reported in F.Supp.2d, 2006 WL 2404332 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.