UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

ROSANNE F. OTT,
Derivatively on behalf of similarly situated
shareholders of Alger Health Science Fund,

             **Plaintiffs,**

        **v.**

**FRED ALGER MANAGEMENT, INC.,
FRED ALGER & COMPANY, INC.,
ALGER ASSOCIATES, INC.,** and **DANIEL
C. CHUNG**, individually,

             **Defendants.**

-------------------------------------------------------------- X

:    **Civ. No. 11 Civ 4418-RJH**

:    ECF Case
:    **Electronically Filed**


### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT


Todd C. Norbitz
Anne B. Sekel
Foley & Lardner LLP
90 Park Avenue
New York, New York  10016-1314
Tel:  (212) 682-7474
Fax:  (212) 682-2329

Of counsel:
Bennett L. Epstein (admitted *pro hac vice*)
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, Illinois  60654-5313
Tel:  (312) 832-4500
Fax:  (312) 832-4700

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

1.   PRELIMINARY STATEMENT ............................................................. 1

2.   ARGUMENT ........................................................................................... 1

    a.   Ott has abandoned Counts Two through Five of the Amended
        Complaint, as well as her claims against Defendants Fred Alger &
        Co., Inc. and Alger Associates Inc. ....................................................... 1

    b.   Plaintiff offers no meritorious opposition to the dismissal of Count
        One (Dodd-Frank Whistleblower Statute). .......................................... 2

    c.   Plaintiff has not rebutted Defendants' arguments for the dismissal of
        Counts Six through Nine (breach of contract and related claims). ................. 7

    d.   Plaintiff fails to address Chung's arguments for the dismissal of
        Count Ten (breach of fiduciary duty). ............................................... 11

    e.   Plaintiff is not entitled to attorneys' fees or punitive damages. ..................... 13

3.   CONCLUSION ...................................................................................... 14

# TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)............................................5

*Barber v. Deutsche Bank Sec., Inc.*,
  32 Misc.3d 1239(A), No. 100653/11, 2011 WL 3925651
  (Sup. Ct. N.Y. County July 14, 2011)................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)......................................6-7

*Blumenthal v. The Sea Hotel Company, LLC*,
  No. 99 Civ. 4881(AJP), 2000 WL 1349249 (S.D.N.Y. Sept. 19, 2000)..................2

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559, 116 S. Ct. 1589, 134 L.Ed.2d 809 (1996).....................................13

*Fiorenti v. Central Emergency Physicians*,
  187 Misc.2d 805, 723 N.Y.S.2d 851 (Sup. Ct., N.Y. County 2001) .......................9

*International Paper Co. v. Suwyn*,
  978 F.Supp. 506 (S.D.N.Y. 1997) ...................................................................8-9

*Koehler v. Bank of Bermuda (N.Y.) Ltd.*,
  No. 96 CIV. 7885(JFK), 1998 WL 67652 (S.D.N.Y. Feb. 19, 1998).......................2

*RSM Prod. Corp. v. Friedman*,
  643 F.Supp.2d 382 (S.D.N.Y. 2009)...................................................................5

*S.E.C. v. Daifotis*,
  No. C 11-00137 WHA, 2011 WL 2183314 (N.D. Cal. June 6, 2011) modified on
  reconsideration, No. C 11–00137 WHA, 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011)...........3

*Truelove v. Northeast Capital & Advisory, Inc.*,
  268 A.D.2d 648, 702 N.Y.S.2d 147 (3d Dep't 2000) ..........................................8-9

*U.S. ex rel. Fine v. MK-Ferguson Co.*,
  99 F.3d 1538 (10th Cir. 1996) .......................................................................4-5

*U. S. v. Caci Intern. Inc.*,
  No. 96 CIV. 7827 (RWS), 1997 WL 473549 (S.D.N.Y. Aug. 18, 1997) aff'd sub
  nom. U.S., by Dept. of Defense ex rel. Pentagen Tech. Intern., Ltd. v CACI Intern.,
  Inc., 172 F.3d 39 (2d Cir. 1999) ......................................................................4

**STATUTES AND OTHER AUTHORITIES**

17 C.F.R. §§ 240.21F-2(b)(i), 240.21F-2(b)(ii) ............................................................6

Fed.R.Civ.P. 23.1 ...........................................................................................................11

Mass Gen. Law ch. 156D, § 7.42 (July 1, 2004) .........................................................11

New York Labor Law § 190 ............................................................................................8

New York Labor Law § 193 ............................................................................................8

New York Labor Law § 740 ............................................................................................1

## 1.   PRELIMINARY STATEMENT[1]

Ott's opposition to Defendants' motion to dismiss is in keeping with her scattershot approach to this entire litigation.  Ott offers <u>no</u> opposition whatsoever to Defendants' motion to dismiss Counts Two through Five and to dismiss defendants Fred Alger & Co., Inc. and Alger Associates Inc. from this action.  Accordingly, in as much as Ott has waived any opposition to this branch of the motion, dismissal of these counts and these defendants should be granted.  In response to Defendants' arguments in support of remaining counts One and Six through Ten, Ott proffers little more than naked denials or rebuttal that is inapt and unsupported.  For the reasons set forth herein, none of Ott's opposition salvages these claims and, therefore, each such claim should be dismissed with prejudice.

## 2.   ARGUMENT

### a.   Ott has abandoned Counts Two through Five of the Amended Complaint, as well as her claims against Defendants Fred Alger & Co., Inc. and Alger Associates Inc.

Plaintiff offers absolutely no opposition to Defendants' motion to dismiss Counts Two (Violation of § 204A of the "1940 Act"), Three (Violation of § 17(d) of the Investment Company Act), Four (Violation of ¶ 204A of the "1940 Act" and "SEC Code of Ethics") and Five (Violation of New York Labor Law § 740) of the Amended Complaint.  Further, Ott specifically withdraws these claims, stating that she "opposes dismissal of only those causes of action that warrant sustainment based upon the strict standards imposed by the U.S. Supreme Court concerning pre-discovery dispositive motions."  Pl. Br. at 1.

---

[1] Unless otherwise indicated, all capitalized terms used herein have the same meaning ascribed to them in Defendants' memorandum of law in support their motion to dismiss (Docket No. 15).  Further, Defendants' memorandum of law in support of their motion to dismiss is referred to herein as "Alger Br.".  Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss is referred to herein as "Pl. Br.".

It is well-settled that the failure to oppose a motion to dismiss a claim is a concession to the relief sought in the motion.  See, e.g., Blumenthal v. The Sea Hotel Company, LLC, No. 99 Civ. 4881(AJP), 2000 WL 1349249, *4-5 (S.D.N.Y. Sept. 19, 2000) (dismissing as abandoned those causes of action for which plaintiff offered no arguments in favor of sustaining)[2]; Koehler v. Bank of Bermuda (N.Y.) Ltd., No. 96 CIV. 7885(JFK), 1998 WL 67652, *8 (S.D.N.Y. Feb. 19, 1998) (dismissing the counts for which plaintiff offered no opposition to defendant's motion to dismiss).  Accordingly, Plaintiff's failure to oppose any argument made by Defendants concerning the dismissal of Counts Two through Five, along with Plaintiff's representation that she affirmatively waives such opposition (Pl. Br. at 1) requires dismissal of these Counts with prejudice.[3]

Similarly, Ott does not deny, and thereby concedes, that the Amended Complaint asserts no substantive allegations against Fred Alger & Co., Inc. or Alger Associates, Inc.  See Alger Br. at 39.  Accordingly, all purported claims against these defendants must be dismissed with prejudice.

### b. Plaintiff offers no meritorious opposition to the dismissal of Count One (Dodd-Frank Whistleblower Statute).

As an initial matter, Ott explicitly concedes that to avoid dismissal of her Dodd-Frank claim she must state a *prima facie* case, including for each of the following elements, that (i) she engaged in protected activity; (ii) she suffered adverse employment action; and (iii) such action was causally connected to the protected activity (Alger Br. at 10-11).  See Pl. Br. at 13.

---

[2] Copies of all cited unreported cases are attached hereto.

[3] On this point, Defendants note that prior to the filing of Defendants' motion to dismiss, the Court afforded Plaintiff ample opportunity to withdraw or amend her claims based on the anticipated motion to dismiss arguments set forth in Defendants' pre-motion letter to the Court.  Plaintiff's refusal to so much as meet and confer regarding the merit of Defendants' motion to dismiss Counts Two through Five, and now Plaintiff's concession that such claims should be dismissed (Pl. Br. at 1), is indicative of Ott's pattern of bad faith in this litigation.

     **i.**      Protected Activity

        (1)     Ott admits that she reported the Trading Policy and her concerns therewith to the SEC prior to the effective date of Dodd-Frank.

Ott concedes (and the case law is clear) that the protections of Dodd-Frank are not to be retroactively applied. Pl. Br. at 13-14; Alger Br. at 12; see also S.E.C. v. Daifotis, No. C 11-00137 WHA, 2011 WL 2183314, *12-14 (N.D. Cal. June 6, 2011) modified on reconsideration, No. C 11–00137 WHA, 2011 WL 3295139, *4-7 (N.D. Cal. Aug. 1, 2011) (dismissing aiding and abetting claims based on conduct that occurred prior to the Act's effective date because Dodd-Frank does not apply retroactively to allow for such claims). Thus, for a report to the SEC to be deemed a "protected activity," it must provide new information "after the statute's effective date" of July 22, 2010. Pl. Br. at 13-14.

Dodd-Frank's clear prospective standard renders Plaintiff's purported whistleblower claim infirm; and for this reason, Ott can only try (unsuccessfully) to downplay the clear significance of (i) her pre-July 22 communications to the SEC, during which she reported the Trading Policy and her concerns about its "legitimacy and legality" and (ii) Alger's pre-July 22 self-reporting of the Trading Policy to the SEC. Alger Br. at 6-7 (citing Am. Compl. at ¶¶ 152-53, 175). Specifically, in her opposition brief, Ott glosses over these reports which, by her own allegations, conveyed the only information critical to her claim – i.e., that Alger had enacted a Trading Policy that she purportedly believed violated securities law. Pl. Br. 7-9, 14.[4] By way of a smokescreen, Ott focuses instead on allegations that in "late July 2010"[5] she became a self-

---

[4] Indeed, Ott claims that during this time period, prior to the effective date of Dodd-Frank, the SEC expressly acknowledged the issues she raised about the Trading Policy. Pl. Br. at 7. However, Ott does not – nor can she – allege that the SEC ever determined that the Trading Policy was improper. Alger Br. at 14, n.9.

[5] Ott studiously avoids furnishing the specific date in July (see Am. Compl. at ¶ 218) on which she purportedly "became an official whistleblower." Despite this obfuscation, even assuming that by alleging "late

described "official whistleblower" under Dodd-Frank (Pl. Br. at 14) because she <u>subsequently</u> provided the SEC documentation that purported to illustrate that the <u>previously reported</u> Trading Policy was infirm (<u>id.</u>). Clearly, Ott fails to allege a "protected activity" because her position relies on the faulty premise that mere additions to, or elaborations on, a <u>previously reported</u> claim to the SEC, can somehow be considered "new" information. Ott offers absolutely <u>no</u> authority in support of this proposition, and not surprisingly, it is contradicted by the reasoning applied by federal courts in analogous circumstances. <u>See, e.g.</u>, <u>U.S. ex rel. Fine v. MK-Ferguson Co.</u>, 99 F.3d 1538, 1544-47 (10th Cir. 1996); <u>U. S. v. Caci Intern. Inc.</u>, No. 96 CIV. 7827 (RWS), 1997 WL 473549, *9 (S.D.N.Y. Aug. 18, 1997) <u>aff'd sub nom.</u> <u>U.S., by Dept. of Defense ex rel. Pentagen Tech. Intern., Ltd. v CACI Intern., Inc.</u>, 172 F.3d 39 at *1 (2d Cir. 1999). Specifically, the <u>Fine</u> court addressed a *qui tam* plaintiff's right to file a False Claims Act complaint in which the claims were "based upon" information already publically disclosed through a governmental report and audit.[6] Plaintiff argued that the publically disclosed information presented no bar to his claim because he asserted "more specific allegations" and additional claims of wrongdoing than those found in the public disclosure. <u>Fine</u>, 99 F.3d at 1546. The court was not persuaded that the appropriate focus of its analysis was plaintiff's elaborations on, and additions to, the publically disclosed material and held that the proper inquiry instead turned on whether plaintiff's claims were "substantially identical" to the

---

July" Ott, in fact, means "after July 22," for the reasons set forth below, this argument fails to save Ott's Dodd-Frank claim.

    [6] The False Claims Act bars actions based upon publically disclosed "allegations or transactions." <u>Fine</u>, 99 F.3d at 1545.

allegations contained in the public disclosure. Fine, 99 F. 3d at 1547. Finding that they were substantially the same, the court barred plaintiff's complaint. Id. at 1548.[7]

Applying the same analysis here, it is clear that the material provided by Ott to the SEC after the effective date of Dodd-Frank – specifically, "new documentation" and "many of the examples" of the effect of the Trading Policy – does not alter the fundamental substance of her claim. Pl. Br at 14-15. No matter how much further "elaboration" Ott provided the SEC after July 22, the fact remains that the only substantive allegation in her post-effective date reporting was the purportedly infirm Trading Policy which is precisely identical to the claim she reported to the SEC prior to Dodd-Frank's effective date.

Accordingly, because Plaintiff's allegations regarding the timing of her reporting to the SEC fail to substantiate even the first element of a Dodd-Frank whistleblower claim, it should be dismissed. In any event, should the Court consider the remaining elements of this claim, as reflected below, each is unsupportable.

> (2)     Ott did not allege a reasonable belief that the Trading
> Policy violated securities law in her Amended Complaint, and she does
> not assert one in her opposition.

Ott concedes that she must meaningfully allege that her belief that the Trading Policy violated securities law was reasonable. Pl. Br. at 15-17. In this regard, the Court will not deem conclusory allegations, legal conclusions, deductions and opinions couched as factual allegations to be presumptively truthful. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009); RSM Prod. Corp. v. Friedman, 643 F.Supp.2d 382, 394 (S.D.N.Y. 2009).

---

[7] The Fine court additionally noted that where public disclosure has already occurred, no incentive for a private qui tam suit is needed. 99 F.3d at 1546. The same holds true here. The purpose of Dodd-Frank is to encourage individuals to bring a new claim to the SEC's attention. Alger Br. at 11-12. Where the SEC already has been advised of a claim, it intends to discourage (not incentivize) the recycling, rehashing or re-reporting of the same claim.

Further, a plaintiff must "nudge[] [its] claims across the line from conceivable to plausible" to avoid dismissal. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L.Ed.2d 929, 929 (2007).  By any measure, Ott's allegations regarding the Trading Policy are both conclusory and implausible.  Ott argues that her belief that the Trading Policy violated securities law was reasonable because she reported it to the SEC (Pl. Br. at 16), and that she "notif[ied] Alger's Board of Directors" of the Trading Policy (Pl. Br. at 16).  In other words, according to Ott, the reasonable belief standard, set forth at 17 C.F.R. §§ 240.21F-2(b)(i), 240.21F-2(b)(ii) (Alger Br. at 13), is satisfied by anyone who simply reports a supposed violation to the SEC, but without providing a plausible explanation why their belief was reasonable.  Ott offers absolutely no support for this otherwise meaningless standard.  Clearly, this is not the case.

Indeed, Ott claims that "it is irrelevant" that her allegations indicate that (i) she abided by the Trading Policy for two months prior to taking any action; (ii) she understood Chung to have authority to participate in the HS Fund's investment decisions; and (iii) the Trading Policy was modeled after a similar policy long-employed by another Alger-managed fund about which no one had ever raised any question.  Pl. Br. at 16.  Far from being irrelevant, however, these allegations, which directly evidence Ott's attitude toward the Trading Policy, render other allegations in this regard implausible and, therefore, insufficient to support her claims under Twombly.

> **ii.** Causality
>
> (1) Ott concedes that her "vindictive" treatment began long before she complained of the Trading Policy – therefore, such treatment does not suffice to state causality.

Ott concedes by her silence that in order for her Dodd-Frank claim to survive dismissal, she must allege more than conclusory statements of causality.  Pl. Br. at 17-18.  Further, Ott does

not address at all, much less refute or explain why the laundry list of purported "vindictive[]" treatment she allegedly suffered began <u>nearly a year prior</u> to the implementation of the Trading Policy.  Alger Br. at 16, Am. Compl. at ¶ 125.   Put simply, Plaintiff does not – indeed, she cannot – contest that the history of events upon which she relies renders her claim of retaliation implausible under <u>Twombly</u> since it is not linked to or caused by any reporting of the Trading Policy to the SEC by Ott.[8]

In sum, having failed to proffer any meritorious opposition to Defendants' arguments for dismissal, Plaintiff's Dodd-Frank claim must be dismissed.

### c.    Plaintiff has not rebutted Defendants' arguments for the dismissal of Counts Six through Nine (breach of contract and related claims).

Ott offers no rebuttal to the well-settled law cited in Defendants' motion to dismiss that hold that professional bonuses, which are payable within the <u>sole discretion</u> of an employer, <u>cannot sustain a breach of contract claim or any other related contract claim</u> (<u>see</u> Alger Br. at 27-28).  Pl. Br. at 18-24.  Nor does Ott offer any facts refuting that the object of her breach of contract and related contract claims – i.e. her bonus and deferred compensation awards – were anything but in the sole discretion of Alger.  <u>Id</u>.  Moreover, to the extent Plaintiff claims that bonuses may be considered "wages" as defined by the New York Labor Law (not even the grounds for a cause of action for wages in the Amended Complaint), this, too, is irrelevant since bonuses are considered wages only if they are "vested and mandatory" and, unlike here, <u>non</u>discretionary.  Pl. Br. at 19; <u>infra</u> at 7-10.

---

[8] While Ott confirms in her opposition brief that she relies on her internal reports to Alger (Pl. Br. at 17), such internal reporting efforts do not support a retaliation claim under Dodd-Frank (<u>see</u> Alger Br. at 15, n.10) and Ott offers absolutely nothing to refute this conclusion.

Therefore, apart from other infirmities (set forth below), because Plaintiff impermissibly alleges only an entitlement to discretionary bonuses or deferred compensation, Plaintiff's breach of contract claim and each related contract claim must be dismissed for this reason alone.

### i.     Count Six (Breach of Contract)

As a threshold matter, Plaintiff's breach of contract claim should be dismissed because Ott does not plead the existence of a contract with Alger. Ott offers no meaningful rebuttal to the fact that the Amended Complaint's two unsubstantiated references to a "contract" and an "Incentive Plan" (both of which are made with no accompanying allegations regarding the terms or conditions of such contract or plan) are legally insufficient to satisfy the "contract" element of a breach of contract claim. See Alger Br. at 28-29.

Unable to allege the existence of a contract with Alger, Plaintiff instead proclaims in conclusory fashion that because bonus amounts may be considered "wages" under the New York Labor Law, then for this reason alone Plaintiff is entitled to recover the alleged bonus amounts. Pl. Br. at 19. This argument misses the mark for several separate and independent reasons.

To begin with, the New York Labor Law definition of wages – which is, by express statutory language, a definition of wages "as used in this article" – does not apply here. New York Labor Law § 190. Ott has not asserted a claim for wages under the New York Labor Law, let alone alleged that the bonus amounts she seeks in her Amended Complaint are wages as defined by the New York Labor Law. This alone renders Ott's argument unavailing. In addition, none of the cases cited by Ott require the application of the New York Labor Law definition of wages to this common law breach of contract claims for bonuses. See Truelove v. Northeast Capital & Advisory, Inc., 268 A.D.2d 648, 648-650, 702 N.Y.S.2d 147, 147 (3d Dep't 2000) (dismissing plaintiff's New York Labor Law § 193 action); International Paper Co. v. Suwyn, 978 F.Supp. 506, 514 (S.D.N.Y. 1997) (dismissing claim for violation of New York

Labor Law for nonpayment of wages); <u>Fiorenti v. Central Emergency Physicians</u>, 187 Misc.2d 805, 809, 723 N.Y.S.2d 851, 855 (Sup. Ct., N.Y. County 2001) (affirming denial of dismissal of New York Labor Law claim for unpaid wages).

Further, even if the New York Labor Law definition of wages applies here, Ott's allegations are nevertheless insufficient. Bonuses are deemed to be wages only if they are mandatory, vested and linked to personal performance as opposed to company performance (Pl. Br. at 19). Here, Ott's allegations indicate that her bonus and deferred compensation awards were fully "discretionary" (Am. Compl. at ¶¶ 107, 125, 289-90, Ex. E) and inextricably linked to the <u>firm's</u> performance in the market. Am. Compl. at ¶ 108 (Ott was told that all bonuses were "down significantly" as a <u>result of various market conditions</u>); <u>see also</u> Am. Compl. at ¶ 289 ("Chung communicated to Ott that the <u>firm's performance</u> necessitated a decline in incentive compensation and deferred compensation grants..."). Moreover, Ott alleges that each and every year she worked at Alger – including the years for which she now claims she is owed additional amounts – she received a bonus which varied widely in amount and was determined entirely in Alger's discretion. <u>See</u> Am. Compl. at ¶¶ 98, 102, 103, 107, 108, 291. Consequently, because Ott's bonuses and deferred compensation are alleged to be dependent at least in part on the success of the firm and are awarded at Alger's discretion, they cannot be considered wages under New York Labor Law. <u>See, e.g.</u>, <u>Truelove</u>, 268 A.D.2d at 649-650, 702 N.Y.S.2d at 147 (3d Dep't 2000); <u>see also</u> <u>Barber v. Deutsche Bank Sec., Inc.</u>, 32 Misc.3d 1239(A), *7-8, No. 100653/11, 2011 WL 3925651, *4-5 (Sup. Ct. N.Y. County July 14, 2011) (dismissing plaintiff's New York Labor Law claim because allegations revealed that bonus was contingent on both individual's and firm's performance).

   **ii.**  Count Seven (Breach of Implied Contract)

Ott does not rebut Defendants' argument that the bonuses she seeks are entirely discretionary.  Therefore, there are no grounds for a breach of implied contract claim. Notwithstanding Ott's reference to black letter law that a contract may be implied from parties' course of dealing (Pl. Br. at 20), the substance of which Defendants do not contest, Ott fails to point to <u>any</u> factual allegation reflecting a course of dealing between the parties which would give rise to an implied contract for bonus amounts.  To the contrary, as Defendants previously explained (Alger Br. at 30), Ott has not alleged any course of conduct from which one could imply that Ott would receive the bonus amounts that she now claims she should have.  Ott's allegations are clear that her bonuses varied from year to year and were in Alger's discretion. Am. Compl. at ¶¶ 233, 291, 338.

   **iii.**  Count Eight (Promissory Estoppel)

First, Plaintiff does not distinguish or contradict Defendants' claim that promissory estoppel is not a recognized claim in the employment law context under New York law (Alger Br. at 31).  Nor does she cite to any facts which satisfy the elements of the claim.  To the contrary, once again, Plaintiff's sole opposition to Defendants' arguments is a recitation of general law regarding promissory estoppel claims and a conclusory and unsupported statement that "Ott[] reli[ed] on clear and unambiguous promises that he [sic] would be compensated in exchange for her efforts on behalf of Alger."  Pl. Br. at 24.  Such a claim is belied by the fact that the letter in which Ott is notified of her compensation for her position as Senior Vice President, starting in April 2008 (Am. Compl. Ex. F), does not include a reference to any bonus at all, let alone a clear and unambiguous promise of one.

   Thus, for the reasons set forth above and in Defendants' motion to dismiss, Plaintiff's claim for promissory estoppel must be dismissed.

      **iv.**     Count Nine (Quantum Meruit; Unjust Enrichment)

Taking a similar tack regarding the defense of her quantum meruit/unjust enrichment claim, Ott cites uncontested horn book law regarding the nature of such claims but does not cite to any allegation of the Amended Complaint which satisfies their elements. Specifically, as Defendants argue in their motion to dismiss, Ott fails to allege why the salary she was paid in compensation for her services was insufficient to compensate her for her work (Alger Br. at 31). Further, to the extent that Ott's opposition on this point (Pl. Br. at 22) implies that the at-issue bonus amounts should be deemed to be wages for her services, as discussed in detail supra at 7-10, there are no allegations which support such a claim.

      **d.**     **Plaintiff fails to address Chung's arguments for the dismissal of Count Ten (breach of fiduciary duty).**

Ott's sole response to Chung's claim that she failed to allege an adequate demand of the HS Fund Board of Trustees for litigation against Chung (Alger Br. at 32-34), under either the Federal Rules of Civil Procedure or Massachusetts law, is the following: "Ott further alleges that she raised these concerns [regarding the trading policy and its consequences] with Chung in writing [] and to Alger's Board." Pl. Br. at 24. Even assuming the truth of this statement, it is no answer to the fact that Ott's July 14, 2010 letter to the Alger Management Board contains no demand for litigation against Chung, as it must to satisfy the pleading requirements of Fed.R.Civ.P. 23.1 and the substantive requirements of Mass Gen. Law ch. 156D, § 7.42 (July 1, 2004). Similarly, Ott's response provides no answer to the fact, as Chung previously demonstrated (Alger Br. at 34), that the only remedial action proposed by Ott in her letter is not litigation against Chung, but rather, selling Ott the management of the HS Fund. Nor does Ott's statement rebut the fact that her "writing" to "Alger's Board" did not set forth the grounds on

which a purported litigation claim should be brought (as it must under Massachusetts law) so that the HS Fund Board of Trustees could properly evaluate it (Alger Br. at 34).

Next, Ott argues that Chung's implementation of the Trading Policy "clearly...breached his fiduciary duty as CIO" because the Trading Policy allowed other Portfolio Managers "to personally gain by trading in front of the HS Fund and obtaining better execution in their funds" (Pl. Br. at 25). At the risk of repetition, this too is no response to the fact that the Amended Complaint (i) reflects that Chung implemented the Trading Policy to protect the interests of all Alger-managed funds (Alger Br. at 36-37); (ii) Stroock & Stroock found that implementation of the Trading Policy was well-within Chung's authority and duty as CIO of Alger to protect the investments of shareholders in all the Alger-managed funds, and further, did not violate Alger's fiduciary duty to seek best executions for its clients (id.)[9]; and (iii) Chung has the right to participate in HS Fund investment decisions.[10]

Ott also argues that the Amended Complaint is "rife with examples of the deleterious effects" of the Trading Policy. Pl. Br. at 25. This statement – which does not identify any specific examples – does not explain, let alone remedy, Ott's failure to allege that the HS Fund suffered any damages separate and apart from remuneration damages Ott herself purportedly suffered (Alger Br. 38). Moreover, Ott does not refute, and thereby concedes, that the HS Fund suffered no loss in value attributable to the Trading Policy and, in fact, experienced a slight increase in value attributable to the short trading delays. Id.

_____

[9] Plaintiff does not contest that the Stroock Report (see Alger Br. at 2, n.3) may be considered for purposes of this motion to dismiss. Indeed, Plaintiff again references the Stroock findings in her opposition (see Pl. Br. at 10).

[10] Even if such decisions were "unsuccessful business decisions," they are insufficient as a matter of law to state a claim for breach of fiduciary duty. Alger Br. at 37.

Finally, regarding Ott's claim with respect to causation, even assuming its truth, i.e. that the HS Fund never was allowed to buy Wellpoint, Inc. stock following Ott's suggestion that they do so (Pl. Br. at 25), such a claim does not demonstrate the requisite causality.  Quite the opposite, Ott's cited example <u>proves</u> that there was <u>no connection</u> between the Trading Policy and the decision not to purchase Wellpoint stock.  To elaborate, since the Trading Policy required no more than a <u>two hour delay</u> in trading, it is logically impossible that the decision not to purchase stock at all ever could have flowed from the policy's application.

### e.    Plaintiff is not entitled to attorneys' fees or punitive damages.

Ott cites <u>BMW of N. Am., Inc. v. Gore</u>, 517 U.S. 559, 116 S. Ct. 1589, 134 L.Ed.2d 809 (1996) to support her claim for attorneys' fees and punitive damages.  This case, however, provides no support to Ott's claim here.  In <u>BMW of N. Am.</u>, the Supreme Court, which was assessing a punitive damage award for excessiveness under the Fourteenth Amendment, made clear that the states have "considerable flexibility" regarding the imposition of punitive damages. 517 U.S. at 568, 116 S. Ct. at 1595, 134 L.Ed.2d at 809.  Thus, the well-settled New York law cited by Defendants which bars the award of punitive damages and attorneys' fees unless they are recoverable pursuant to express statutory, contractual authority or court rule or where defendant's conduct is "aimed at the public generally," is applicable here.  Alger Br. at 40.  Ott has not alleged or argued that any statute, contract or court rule permits their award.  Nor has she alleged that any conduct by Defendants was directed to the public.  Indeed, the sole basis articulated for the award is "Defendants' retaliation of Ott's lawful complaints regarding its new trading policy and consistent abuse and harassment."  Pl. Br. at 26.  This is insufficient to warrant punitive damages or the award of attorneys' fees.

3.     **CONCLUSION**

Having failed to mount any meaningful opposition to Defendants' motion to dismiss every count of the Amended Complaint, and having affirmatively abandoned Counts Two through Five and the allegations against Fred Alger & Co., Inc. and Alger Associates Inc., Defendants respectfully requests that the Amended Complaint be dismissed in its entirety with prejudice against all Defendants.

Dated:  January 24, 2012                    Respectfully submitted,


                                            By: /s/ Todd C. Norbitz
                                                Todd. C. Norbitz

                                            Todd C. Norbitz
                                            Anne B. Sekel
                                            Foley & Lardner LLP
                                            90 Park Avenue
                                            New York, New York  10016-1314
                                            Tel:  (212) 682-7474
                                            Fax:  (212) 682-2329

                                            Of counsel:
                                            Bennett L. Epstein (admitted *pro hac vice*)
                                            Foley & Lardner LLP
                                            321 North Clark Street
                                            Suite 2800
                                            Chicago, Illinois  60654-5313
                                            Tel:  (312) 832-4500
                                            Fax:  (312) 832-4700

                                            Attorneys for Defendants