```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/27/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                      :

ROSANNE F. OTT,
Derivatively on behalf of similarly situated  :
Shareholders of Alger Health Science Fund,

                                    :

                Plaintiff,            11 Civ. 4418 (LAP)

                                     :

                -against-           MEMORANDUM & ORDER

                                     :

FRED ALGER MANAGEMENT, INC.,
FRED ALGER & COMPANY, INC.,          :
ALGER ASSOCIATES, INC., and
DANIEL C. CHUNG, individually,         :

                 Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LORETTA A. PRESKA, Chief United States District Judge:

        Plaintiff Rosanne F. Ott ("Ott") brings this action against her former employer Fred Alger Management, Inc. ("Alger"); two of Alger's related companies, Fred Alger & Company, Inc. and Alger Associates, Inc.; and Daniel C. Chung ("Chung"), Alger's Chief Executive Officer and Chief Investment Officer (collectively, "Defendants"). Ott alleges that Defendants violated the whistleblower provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act" or "Dodd-Frank") by retaliating against her for reporting an allegedly unlawful trading policy to the Securities and Exchange Commission ("SEC"). Ott also asserts claims for, among other things, violations of the Investment Advisors Act of 1940, breach of contract, and a derivative claim for breach of fiduciary duty. The defendants move to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1. For the following reasons, the motion is granted in part and denied in part.

BACKGROUND

Alger is an investment adviser for various mutual funds, private portfolios, and institutional clients.  (See Amended Complaint dated July 6, 2011 ("AC") ¶¶ 30-31.)  Ott, a former United States Army Black Hawk helicopter pilot, was hired by Alger in 2002 as a Vice President and Senior Analyst, covering the medical supplies and device sectors.  (AC ¶¶ 42-54, 90.)  In 2005, Ott was promoted to the role of co-Portfolio Manager ("PM") of Alger's Health Sciences Fund ("HS Fund").  (AC ¶ 92.)  Even after becoming PM, Ott continued to serve as an analyst.

In April 2010, Alger implemented the trading policy at issue in this lawsuit (the "Trading Policy" or the "Policy").  (AC ¶ 140.)  Chung, Alger's CEO and CIO, set forth the Policy in an email:

> We need to implement a change to portfolio management on the HC [HS] fund, in particular, in line with the Alger Analyst Fund, a) no trades should be executed in the HC [HS] Fund without prior notice to all PMs by email, with explanation of the sales or buys, b) Trading, if you receive an order, you will need to hold it for the shorter time of (a) confirm back from CIO/PMs or (b) two hours.

(AC ¶ 141 (alterations in original).)

Ott alleges that the Trading Policy allowed PMs of other funds to place trades ahead of the HS Fund, which allegedly allowed the other funds to obtain "better execution" at the expense of the HS Fund.  (AC ¶ 142.)  She also alleges that after the Policy was implemented, the HS Fund was at times prevented from placing trades at all.  (See AC ¶¶ 143-48.)

Shortly after the Policy was implemented, Ott's co-PM on the HS Fund, David Farhadi, referred to the Policy as "sabotage."  (AC ¶ 150.)  Farhadi also discussed the Policy

with Alger's General Counsel, who was "dismissive," calling the Policy "fine." (AC ¶ 150.)  In addition, Alger's Chief Compliance Officer was not aware of the Policy at the time it was created.  (AC ¶ 151.)

Because Ott felt that Alger's legal and compliance units were ignoring concerns about the Policy, she contacted the SEC.  (AC ¶ 152.)  Ott had "multiple conversations" with employees of the SEC, after which Michael Didiuk, a representative of the SEC's Division of Investment Management, told Ott, "This policy absolutely hurts investors by all but guaranteeing poor execution as a result of a two hour holding period. We would like to refer the matter to the SEC's Division of Enforcement so that it can be investigated formally."  (AC ¶¶ 153-55.)

In June 2010, Ott, through her attorney, had discussions with Alger's counsel about the Policy.  (AC ¶¶ 166-71.)  During these discussions, Ott's attorney suggested that Alger sell the HS Fund to Ott.  (AC ¶ 171.)  Around July 1, 2010, Alger's counsel "self-reported" Ott's complaint about the Policy to the SEC and hired an outside law firm—Stroock & Stroock & Lavan LLP ("Stroock & Stroock")—to conduct an investigation into its legality.  (AC ¶ 175.)  On July 14, 2010, Ott sent a letter to Alger's board of directors.  (AC Ex. L.)  The letter set forth Ott's criticisms of the Policy and of Chung, reiterated her desire to purchase the HS Fund, and stated, "It appears I am left with no option other than to initiate a shareholder complaint against the firm for hurting me as an investor."  (AC Ex. L.)

On August 4, 2010, Ott met with four members of the SEC's Division of Enforcement and answered questions for more than two hours.  (AC ¶ 221.)  During the meeting, she provided the SEC with more than sixty pages of documents allegedly showing examples of

poor execution in the HS Fund.  (AC ¶ 222.)  On September 7, 2010, Ott filed a formal

complaint with the SEC.  (AC ¶ 220.)

Sometime in September, Chung allegedly remarked to a co-worker, "You know,

Rose [Ott] is wrong and the Board supports me.  She [Ott] is gonna start feeling the heat."  (AC ¶

230 (alteration in original).)

Ott alleges that Chung then embarked on a campaign to force Ott to quit.  (See

AC ¶¶ 234-51.)  In addition to a laundry list of allegedly harassing actions, Ott alleges that

Chung reduced her 2010 bonus by 92% from the previous year and that he demoted her by

replacing her as Sector Head of the Alger Health Care team.  (AC ¶¶ 259-61, 301.)  Ott was

ultimately fired in January 2011.  (AC ¶ 278.)

In October 2010, Stroock & Stroock issued its report on the Trading Policy and

found that the Policy did not violate any applicable laws.  (AC ¶ 228; see Affidavit of Todd C.

Norbitz, dated Oct. 21, 2011 ("Norbitz Aff."), Ex. 1.)

During her time at Alger, Ott was compensated with salary, bonuses, and deferred

compensation grants.  From 2005 to 2007, Ott's annual salary was $350,000.  (AC at 53, chart.)

From 2008 to 2010, her salary was $375,000.  (AC at 53, chart.)  Between 2005 and 2008, Ott

received annual bonuses ranging from $135,000 to $375,000.  (AC at 53, chart.)  In 2009 and

2010, she received annual bonuses of $121,500 and $10,000, respectively.  (AC at 53, chart.)

Attached to Ott's complaint are letters that Alger sent to Ott informing her of the amounts of her

annual bonuses.  The letters describe the bonuses as "discretionary."  (AC Exs. E, G, U.)  Ott

alleges that her 2009 and 2010 bonuses were inconsistent with bonuses paid to employees of

similar seniority level and performance quality.  (AC ¶¶ 292-93.)

Under the terms of Alger's deferred compensation plan, deferred compensation grants vest in four years, with a potential match from Alger of up to 175% of the grant amount. (AC ¶ 283.)  If an employee is terminated before the grant vests, the employee is entitled to a pro rata share of the grant.  (AC ¶ 295.)  Ott received grants in 2006, 2007, 2008, and 2009.  (AC at 53, chart.)  Her 2006 grant vested and she received $365,940 in March 2011.  (AC ¶ 284.)  It is unclear whether Ott received pro rata shares of her other grants, but she does not appear to make claims for any such amounts in this lawsuit.  (See AC ¶¶ 296-97.)  Ott, however, alleges that she is entitled to the additional amount of deferred compensation that she would have received had she been employed by Alger when the other grants vested.  (AC ¶¶ 297-98.)

DISCUSSION

I.   Legal Standard

In assessing a motion to dismiss, the Court must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the Plaintiff's favor.  Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A pleading that offers "labels and conclusions" or "a formalistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).  Nevertheless, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be

made by the court on a Rule 12(b)(6) motion.  Fact-specific questions cannot be resolved on the pleadings.  A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."  Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (internal quotations omitted).

## II.   Count One:  Dodd-Frank Whistleblower Statute Violation

The Dodd-Frank Act added section 21F to the Securities Exchange Act of 1934. See 15 U.S.C. § 78u-6.  Section 21F is entitled "Securities Whistleblower Incentives and Protection" and contains an anti-retaliation provision.  The anti-retaliation provision prohibits discrimination against "a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—(i) in providing information to the Commission [i.e., the SEC] in accordance with this section."  15 U.S.C. § 78u-6(h)(1)(A)(i).  The statute defines a whistleblower as an individual who provides "information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission."  15 U.S.C. § 78u-6(a)(6).

The elements of a retaliation claim under the Dodd-Frank Act are (1) that the plaintiff engaged in a protected activity, (2) that the plaintiff suffered an adverse employment action, and (3) that the adverse action was causally connected to the protected activity.  See Securities and Exchange Commission, Implementation of the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934, Exchange Act Release No. 34-64545 (May 25, 2011), at 18 n.41.

A.      Protected Activity

To be covered by the anti-retaliation provision of the Dodd-Frank Act, an individual must "possess a reasonable belief that the information [he or she is] providing [to the SEC] relates to a possible securities law violation."  17 C.F.R. § 240.21F-2(b)(i).  The SEC has indicated that the "'reasonable belief' standard requires that the employee hold a subjectively genuine belief that the information demonstrates a possible violation, and that this belief is one that a similarly situated employee might reasonably possess."  Exchange Act Release No. 34-64545 at 7.

Defendants argue that Ott has not engaged in a protected activity because (1) her initial report to the SEC was made before the statute's effective date, and (2) she has not alleged a reasonable belief that the Trading Policy violated the securities laws.

1.      Applicability of the Anti-Retaliation Provision to Ott's Actions

The parties appear to agree that the anti-retaliation provision of the Dodd-Frank Act does not have retroactive effect.  See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (strong presumption against retroactive application absent clear congressional intent to the contrary); S.E.C. v. Daifotis, No. 11 Civ. 00137 (WHA), 2011 WL 2183314, at *12-14 (N.D. Cal. June 6, 2011) (holding that certain sections of Dodd-Frank do not have retroactive effect). They dispute, however, whether Ott's reports to the SEC nonetheless can be considered protected activity.

Ott alleges that she provided information to the SEC about the Trading Policy both before and after July 22, 2010, the effective date of the Dodd-Frank Act.  Notably, she alleges that on August 4, 2010, she met with members of the SEC's Division of Enforcement,

answered questions for more than two hours, and provided more than sixty pages of documents relating to the execution of trades under the Policy.  Defendants, relying largely on a comment from the SEC, argue that this is not protected activity because the anti-retaliation provision applies only to individuals who provide "new" information to the SEC after Dodd-Frank's enactment.  See Exchange Act Release No. 34-64545 at 19 ("We believe that applying Section 21F prospectively—for new information provided to the Commission after the statute's enactment and not to information previously submitted—is most consistent with Congressional intent and with the language of the statute.").   Defendants argue that Ott's August 4 information was not "new" because she already had made the SEC aware of the Trading Policy prior to Dodd-Frank's enactment.

The SEC's comment, however, was made in the context of the "bounty" provision of section 21F.  Under the "bounty" provision, a whistleblower who provides "original information" to the SEC is entitled to an award of portions of money recovered by the SEC.  See 15 U.S.C. § 78u-6(b).  The statute defines "original information" in part as information "not known to the [SEC] from any other source."  15 U.S.C. § 78u-6(a)(3)(B).  And the SEC's regulations provide that "original information" must be "[p]rovided to the [SEC] for the first time after July 21, 2010 (the date of enactment of the Dodd-Frank [Act])."  17 C.F.R. § 240.21F-4(b)(iv).

The language of the anti-retaliation provision, however, does not require an individual to provide "original information."  The anti-retaliation provision uses only the unmodified term "information."  And there is nothing else in the statute to suggest that the anti-retaliation provision applies only to individuals who provide information that would make them

eligible for an award.  To the contrary, the SEC's implementing regulations make clear that the

"anti-retaliation protections apply whether or not you satisfy the requirements, procedures and

conditions to qualify for an award."  17 C.F.R. § 240.21F-2(b)(1)(iii).  Thus, to the extent

Defendants argue that Ott is not covered by the anti-retaliation provision because she did not

provide "original information" to the SEC after Dodd-Frank's enactment, the argument is

without merit.

To the extent Defendants argue that the anti-retaliation provision imposes a

requirement for "new" information separate from the bounty provision's "original information"

requirement, the argument is similarly unpersuasive.  It is fair to infer from the complaint that

Ott's August 4 information was not known in its entirety to the SEC prior to Dodd-Frank's

effective date.  Thus, even assuming the statute embodies such a "new" information requirement,

Ott's August 4 information plausibly qualifies.

In any event, it bears noting that even if Ott's reporting to the SEC had occurred

in its entirety prior to Dodd-Frank's effective date, there is at least some authority to support the

proposition that she still would be protected by the anti-retaliation provision because the alleged

adverse actions occurred after the statute's effective date.  See Fraser v. Fiduciary Trust Co. Int'l,

No. 04 Civ 6958 (RMB), 2005 WL 6328596, at *7 (S.D.N.Y. June 23, 2005) ("Section 806 [the

whistleblower provision of the Sarbanes-Oxley Act] does apply 'when alleged protected activity

predated the Act's implementation but the employer's discriminatory actions post-dated the

Act's effective date.'" (quoting Lerbs v. Buca Di Beppo, Inc., Case No. 2004-SOX-8, 2004

DOLSOX LEXIS 65, at *25 (Dep't of Labor June 15, 2005)).

Here, Ott alleges that she provided information to the SEC relating to possible violations of the securities laws after the effective date of the Dodd-Frank Act.  Accordingly, this portion of Defendants' motion to dismiss is denied.

### 2.      Reasonable Belief

Defendants next argue that Ott has not alleged a reasonable belief that the Trading Policy violated the securities laws because (i) she abided by the Policy for two months before taking any action within Alger, (ii) she understood that Chung had authority to participate in the HS Fund's investment decisions, and (iii) the Trading Policy was modeled after a similar policy that governed another Alger fund and about which no one ever complained.

While these circumstances ultimately may impact Ott's credibility, they do not render her allegations of a reasonable belief implausible.  Ott alleges that she thought the Policy was wrong from the beginning but that she did not report it internally because her co-PM, Farhadi, had received a dismissive response from Alger's General Counsel about the Policy. (See AC ¶ 150; Pl.'s Memo. in Opp. dated December 21, 2011 at 16.)  Ott also alleges that she attempted to abide by the Policy because she "hoped that either the policy would not have an effect on the performance of the Alger Health Science Fund or that the policy would simply end."  (AC Ex. L.)  Ott has pleaded enough facts plausibly to allege a good faith, subjective belief that the Trading Policy was unlawful.  While other inferences from the facts also may be plausible, a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."  Anderson News, 680 F.3d at 185.

With respect to the objective element of the reasonable belief standard, Ott alleges that the Trading Policy violated Alger's duty to provide best execution to its clients.  The SEC has indicated that an investment advisor, like Alger, has a fiduciary duty to seek best execution for a client's securities transactions in certain circumstances.  See, e.g., In re Karen Michalski, Investment Advisors Act Release No. 1822, 1999 WL 695212, at *3 (Sept. 9, 1999).  Ott alleges that her co-PM described the Policy as "sabotage," that the SEC initially indicated that the Policy "absolutely hurts investors by all but guaranteeing poor execution," and that the SEC referred the matter to its Division of Enforcement to be "investigated formally."  (AC ¶¶ 150, 155.)  Under these circumstances, Ott has plausibly alleged that a "similarly situated employee might reasonably possess" a belief that the Trading Policy violated the securities laws.  Exchange Act Release No. 34-64545 at 16.

### B.    Adverse Action

The Dodd Frank Act's anti-retaliation provision provides that employers may not "discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment."  15 U.S.C. § 78u-6(h)(1)(a).  Similar language in the Sarbanes-Oxley Act's whistleblower provision requires a plaintiff to allege "a materially adverse change in the terms and conditions of employment." Kolchinsky v. Moody's Corp., No. 10 Civ. 6840 (PAC), 2012 WL 639162, at *6 (S.D.N.Y. Feb. 28, 2012) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).  "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  Id.

Ott alleges that after she reported the Trading Policy to the SEC, Chung cut her bonus by 92% and demoted her by replacing her as the Sector Head of the Alger Health Care team.  (AC ¶¶ 259-61, 301.)  Ott also alleges that she was fired.  (AC ¶ 301.)  Thus, Ott has adequately alleged an adverse employment action.

C.      Causal Connection

With respect to causation, "[a]lthough detailed pleading of the facts is not required, see Fed. R. Civ. P. 8(a), a complaint must 'allege a factual predicate concrete enough to warrant further proceedings.'"  U.S. ex rel. Smith v. Yale Univ., 415 F. Supp. 2d 58, 106 (D. Conn. 2006) (quoting U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004)).  "[C]onclusory allegations, without any factual allegations in support, are insufficient to state this element of a whistleblower claim."  Kachaylo v. Brookfield Tp. Bd. of Trs., 778 F. Supp. 2d 814, 821 (N.D. Ohio 2011).

Ott alleges that in September 2010, approximately one month after Ott met with the SEC's Division of Enforcement, Chung told a co-worker, "You know, Rose [Ott] is wrong and the Board supports me.  She [Ott] is gonna start feeling the heat."  (AC ¶ 230 (alterations in original).)  It is fair to infer from this statement that Chung was referring to Ott's position on the Trading Policy and her reports to the SEC.  At the pleading stage, this allegation is sufficient.  Accordingly, Defendants' motion to dismiss Count One of Ott's complaint is denied.

III. <u>Counts Two through Five</u>

   In Counts Two through Five of her complaint, Ott asserts claims for (1) misuse of nonpublic information in violation of section 204A of the Investment Advisers Act of 1940, (2) violations of section 17(d) of the Investment Company Act of 1940, (3) retaliation in violation of section 204A of the Investment Advisers Act and the "SEC Code of Ethics," and (4) retaliation in violation of New York Labor Law section 740.  Ott has not responded to Defendants' motion to dismiss these counts, and her claims therefore are deemed abandoned.  <u>See</u> <u>Lipton v. Cnty. of Orange, N.Y.</u>, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

IV. <u>Counts Six through Nine</u>

   Counts Six through Nine of Ott's complaint assert claims for breach of contract, breach of implied contract, promissory estoppel, and quantum meruit based on (1) Alger's failure to pay Ott adequate bonuses in 2009 and 2010 and (2) Alger's failure to pay Ott additional deferred compensation that she would have earned had Alger not terminated her before the deferred compensation grants vested.

   Under New York law, an employee may enforce an agreement to pay a bonus "where such bonus constitutes 'an integral part of plaintiff's compensation package.'"  <u>Mirchel v. RMJ Secs. Corp.</u>, 205 A.D.2d 388, 389 (1st Dep't 1994) (quoting <u>Harden v. Warner Amex Cable Commc'ns</u>, 642 F. Supp. 1080, 1096 (S.D.N.Y. 1986)).  Ultimately, however, "[a]n employee's entitlement to a bonus is governed by the terms of the employer's bonus plan."  <u>Hall v. United Parcel Serv. of Am.</u>, 555 N.E.2d 273, 279 (N.Y. 1990).  Accordingly, an employee has

no right to a bonus "where the plan vests the employer with absolute discretion as to the

entitlement and amount of any payments thereunder." Culver v. Merrill Lynch & Co., Inc., No.

94 Civ. 8124 (LBS), 1995 WL 422203, at *3 (S.D.N.Y. July 17, 1995).

      Ott alleges that the bonuses Alger paid her in 2009 and 2010 were too small.  But

she has not alleged any facts plausibly suggesting that she was entitled to any particular bonus

amount.  Moreover, the letters she received from Alger regarding her bonuses describe the

bonuses as "discretionary."  (See AC Exs. E, G, U.)  The fact that Ott received higher bonuses in

previous years, without more, is insufficient to raise her claim above the speculative level.  See

Twombly, 550 U.S. at 554-56.  The same is true with respect to Ott's apparent allegation that

other employees were paid more than she was.  See Namad v. Salomon Inc., 543 N.E.2d 722,

723 (N.Y. 1989) (rejecting argument that plaintiff's bonuses, which allegedly were lower than

was the "customary policy of the company," were inadequate where the employer's plan

provided that bonuses were awarded "at the discretion of the management").  Under these

circumstances, Ott has failed to state a claim—under any of the above theories—with respect to

the amount of her bonuses.  See, e.g., Bessemer Trust Co. v. Branin, 498 F. Supp. 2d 632, 639

(S.D.N.Y. 2007) (dismissing quantum meruit claim where bonuses were discretionary and

dismissing promissory estoppel claim because New York law does not recognize promissory

estoppel in the employment context).

      Ott also alleges that she was deprived of deferred compensation that she would

have received had she not been fired before her grants vested.  Her claim rests on the assumption

that she had a right to remain employed by Alger until that time.  Under New York law,

however, employment for an indefinite or unspecified term is presumed to be at-will and thus

terminable at any time by either party, absent an "agreement establishing a fixed duration."

Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 137 (2d Cir. 2007) (quoting De Petris v.

Union Settlement Ass'n, 657 N.E.2d 269, 271 (N.Y. 1995)).  Nothing in Ott's complaint

suggests she had an agreement with Alger for employment for a fixed duration.  Accordingly,

"there simply can be no certainty as to whether [Ott] would have remained employed by [Alger]

long enough for the [deferred compensation grants] to vest pursuant to their vesting schedule."

Kinsey v. Cendant Corp., 521 F. Supp. 2d 292, 308 (S.D.N.Y. 2007).  Accordingly, her claims in

this regard are "too speculative" and must be dismissed.  Id.  (rejecting former at-will

employee's claim for stock options that were unvested at the time of his resignation).  In any

event, Ott has alleged no facts plausibly suggesting that she was entitled to unvested deferred

compensation in the event of her termination.  Accordingly, Counts Six through Nine of Ott's

Amended Complaint are dismissed.

   V.   Count Ten

          In Count Ten, Ott asserts a derivative claim against Chung for breach of fiduciary

duty based on Chung's institution of the Trading Policy.  Defendants argue that the claim should

be dismissed because (1) Ott has failed to allege an adequate demand on Alger's Board of

Trustees, and (2) Ott has not alleged adequately the elements of a breach of fiduciary duty claim.

          A.      Demand

          Prior to bringing a derivative action, a shareholder generally must make a

demand on the corporation.  Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96 (1991).  The

Supreme Court long has held that prior to bringing a derivative action, a shareholder "must make

an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial

action on their part, and this must be made apparent to the court." Hawes v. Oakland, 104 U.S. 450, 460-61 (1882). Federal Rule of Civil Procedure 23.1 provides the standard for pleading in federal court that a demand was made, while state law governs the substantive issue of whether the demand was adequate. See Kamen, 500 U.S. 95-97; Stoner v. Walsh, 772 F. Supp. 790, 795-96 (S.D.N.Y. 1991). Rule 23.1 requires the plaintiff to plead "with particularity" "any effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action." Fed. R. Civ. P. 23.1(b)(3).

As for the substantive law, the parties here do not dispute that Massachusetts law applies because the HS Fund is incorporated there. See Stoner, 772 F. Supp. at 795-96. Massachusetts law prohibits a shareholder from maintaining a derivative action until "a written demand has been made upon the corporation to take suitable action." Mass. Gen. Laws ch. 156D, § 7.42. "There are no exceptions" to this requirement. ING Principal Prot. Derivative Litig., 369 F. Supp. 2d 163, 170 (D. Mass. 2005). The comments to section 7.42 provide that the demand should "set forth the facts concerning share ownership and be sufficiently specific to apprise the corporation of the act or omission to be challenged and the grounds for that challenge so that the demand can be evaluated, and describe the relief requested." Mass. Gen. Laws ch. 156D, § 7.42 cmt. 1 (emphasis added). The comments also provide, "Because the corporation can contact the shareholder for clarification if there are any questions, the specificity of the demand should not become a new source of dilatory motions." Id.

Ott's complaint fails to allege that she took any action to urge Alger's Board of Trustees to pursue any claims against Chung based on the Trading Policy. The complaint references Ott's July 14, 2010 letter to the Board, but that letter likewise contains no demand that

Alger pursue any claims against Chung relating to the Trading Policy.  Instead, the letter

describes Ott's objections to the Policy and proposes that Alger sell the HS Fund to Ott.  And

while in the letter Ott states that she intends to sue Alger on behalf of a class of shareholders, this

alone does not amount to a demand on the Board to pursue remedial action against Chung.  See

Mass. Gen. Laws ch. 156D, § 7.42 cmt. 1 (demand must describe the relief requested); cf.

Levner v. Saud, 903 F. Supp. 452, 456 (S.D.N.Y. 1994), aff'd, 61 F.3d 8 (2d Cir. 1995), (finding

insufficient under Rule 23.1 plaintiff's demand that corporation "take action," in part because

"[t]he demand did not suggest, however, any remedial relief").  Under these circumstances, Ott

has failed to show that she made a demand under Massachusetts law.

In addition, to the extent Ott's letter can be read as asserting a demand on Alger's

Board to pursue remedial action against Chung, she has failed to plead any facts explaining "the

reasons for not obtaining the action."  Fed. R. Civ. P. 23.1.  Accordingly, her complaint does not

satisfy Rule 23.1.

B.     Breach of Fiduciary Duty

Even assuming that Ott's demand was adequate, she fails to state a claim for

breach of fiduciary duty.  Under Massachusetts law, "[a] claim for breach of fiduciary duty has

four elements: 1) existence of a fiduciary duty arising from a relationship between the parties, 2)

breach of that duty, 3) damages and 4) a causal relationship between the breach and the

damages." Qestec, Inc. v. Krummenacker, 367 F. Supp. 2d 89, 97 (D. Mass. 2005) (citation

omitted).

Most notably, Ott fails to allege damages caused by the Trading Policy.  "At the

pleading stage, governed by Rule 12(b)(6), a plaintiff's demand for money damages must satisfy

the <u>Twombly</u> and <u>Iqbal</u> requirement of factual, non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount." <u>Kopperl v. Bain</u>, No. 09 Civ. 1754 (CSH), 2010 WL 3490980, at *4 (D. Conn. Aug. 30, 2010) (citing <u>Fink v. Time Warner Cable</u>, No. 08 Civ. 9628 (LTS), 2009 WL 2207920, at *4 (S.D.N.Y. July 23, 2009)). While Ott alleges that the Policy caused certain trades to be delayed, she alleges no non-conclusory facts plausibly suggesting that the delays had a negative impact on the value of the HS Fund. In fact, according to Alger's outside law firm's investigative report—which is referenced in the complaint—the delays resulted in a "small net positive benefit" to the HS Fund. (Norbitz Aff. Ex. 1 at 27.) As for the instances where trades allegedly were not executed at all, Ott fails to explain how these "non-trades" were caused by the Policy, which provides that trades may be held for two hours at most. Accordingly, her breach of fiduciary duty claim is dismissed.

## VI. Claims Against Fred Alger & Co., Inc. and Alger Associates Inc.

Ott has not alleged any substantive allegations against Fred Alger & Co., Inc. or Alger Associates Inc. and Ott has not responded to Defendants' argument that the claims against them should be dismissed. Accordingly, the claims against Fred Alger & Co., Inc. and Alger Associates Inc. are deemed abandoned and are dismissed. <u>See</u> <u>Lipton</u>, 315 F. Supp. 2d at 446.

## VII.   Attorney's Fees and Punitive Damages

Defendants argue that Ott's claims for attorney's fees and punitive damages should be dismissed. But Ott's claim for attorney's fees cannot be dismissed at this time because the Dodd-Frank anti-retaliation provision provides for their recovery. 15 U.S.C. § 78u-6(h)(1)(C)(iii). And this Court also declines to dismiss Ott's demand for punitive damages

because the parties have not briefed the issue of whether punitive damages are available under

the Dodd-Frank Act's anti-retaliation provision.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Count One of Ott's

Amended Complaint and her claims for attorney's fees and punitive damages is denied.

Defendants' motion to dismiss Counts Two through Ten and to dismiss all claims against Fred

Alger & Co., Inc. and Alger Associates Inc. is granted.  The Clerk of the Court is directed to

terminate the motion pending at ECF No. 14.  The parties are directed to meet and confer and to

submit a proposed scheduling order by October 15, 2012.

Dated: September 27, 2012
       New York, New York

SO ORDERED:

LORETTA A. PRESKA
U.S.D.J.